504 A.2d 975

Carl A. O'Merle and Mary Jane O'Merle, Appellants *v.* Monroe County Board of Assessment Appeals, Appellee.

Argued September 13, 1985, before Judges COLINS and PALLADINO, and Senior Judge KALISH, sitting as a panel of three.

*Arthur L. Zulick, Muth & Zulick,* for appellants.

*John B. Dunn, Matergia and Dunn,* for appellee.

142

Opinion by Judge Colins, February 13, 1986:

Carl A. O'Merle and Mary Jane O'Merle (appellants) appeal an order of the Court of Common Pleas of Monroe County dismissing their statutory appeal from a 1983 reassessment of their house by the Monroe County Board of Assessments. Appellants argue first that the Board's reassessment was not authorized by the Fourth to Eighth Class County Assessment Law (Assessment Law),[1] and second that the selective reassessment of their home violates the uniformity requirement of the Pennsylvania Constitution.[2] Because appellants' first argument is correct, the constitutional issue need not be decided.

The trial court found that on June 30, 1978, appellants purchased the property in question for One Hundred Seventeen Thousand Five Hundred Dollars ($117,500.00). In 1980, while conducting a routine field check of the property, a representative of the Assessor's Office noted that there were two flues coming out of the chimney, indicating the presence of a second fireplace.[3] The prior assessment, which had

---

[1] Act of May 21, 1943, P.L. 571, *as amended*, 72 P.S. §§5453.101-5453.706.

[2] Pennsylvania Constitution Art. VIII, §1 provides that "[a]ll taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws."

[3] Although appellee maintains that this was not a de facto county-wide reassessment, George Richter, the Chief Assessor of Monroe County, testified that,

> . . . *our fieldmen go out and look at every property at least once a year; pull the card*—what triggered this originally, from 1980, was one of our field persons brought this property back to the attention of Mr. Fetherman because at that time we had a market value on it of forty-seven thousand, eight hundred and seventy, in 1980, and the actual purchase price was a hundred and seventeen thousand, five hundred. *This is not unusual. This sort of triggers a response to see whether. everything is correct on the card.*

noted only one fireplace on the property, was part of a county-wide assessment performed in 1972 which assessed appellants' home at Nine Thousand Seven Hundred Fifty Dollars ($9,750.00). Upon discovery of the second flue, the Chief Assessor of Monroe County, George Richter, sent two appraisers to the property, who, based on the property's exterior appearance, the additional fireplace, and the enclosure of porches, increased the cost and design factor from zero to 10%, increased the grade factor from B + 5 to B + 10, eliminated a 15% depreciation factor, and revised upwards the "ladder computation" of the property's value.[4] These changes raised the assess-

---

*Reproduced Record* (R.R.) at 12a. (Emphasis added). Although Mr. Richter denied in response to direct questioning that the higher purchase price was the reason for reassessment, it is readily apparent from his testimony that recovering the tax value implied by the higher purchase price was at least one motive. If the regular field visits constitute a de facto county-wide reassessment, the assessment on appellants is improper, since the imposition of new levies without completion of a formal county-wide reassessment may be barred by 72 P.S. §5453.602(b) of the Assessment Law. *See Croasdale v. Dauphin County Board of Assessment Appeals*, 89 Pa. Commonwealth Ct. 409, 492 A.2d 793 (1985) (third class county may not levy reassessment on 90% of homes until county-wide reassessment is finished). *Compare McKinney v. Board of Commissioners of Allegheny County*, 488 Pa. 86, 410 A.2d 1238 (1980) *with Carino v. Board of Commissioners of Armstrong County*, 79 Pa. Commonwealth Ct. 242, 468 A.2d 1201 (1983).

[4] Mr. Richter testified that the re-evaluation of the fireplace and the porch enclosure was based upon "mistaken judgment" of the 1972 evaluation, while the grade factor and depreciation factor revisions were based on new assessment policies promulgated in 1980 and not yet in effect in 1972. Specifically, grade factor B + 5 and the depreciation factor were no longer in use, so that the methodology of assessment as well as the assessment itself had been updated. Appellant, Mr. O'Merle, testified that his second fireplace was grossly unfinished and unusable and Mr. Richter conceded that no internal examination of the property had been performed. The "ladder computation" simply refers to the method

ment on appellants' house forty-one percent (41%), to Thirteen Thousand Five Hundred Ninety Dollars ($13,590.00). Both sides agree that appellants' ratio of assessed valuation to market valuation was 11% prior to reassessment and 14% subsequent thereto, compared with a median ratio of 12.4% in Smithfield Township.

The proceedings in the trial court are de novo, *Deitch County v. Board of Property Assessment*, 417 Pa. 213, 209 A.2d 397 (1965), and the court in a tax assessment appeal is the finder of facts. *Park Drive Manor Tax Assessment Case*, 380 Pa. 134, 110 A.2d 392 (1955); *In Re Edward G. Kriebel Tax Assessment*, 79 Pa. Commonwealth Ct. 466, 470 A.2d 649 (1984). Upon appeal, the findings of the trial court "must be given great force and will not be disturbed unless clear error appears." *Appeal of Chartiers Valley School District*, 67 Pa. Commonwealth Ct. 121, 125-26, 447 A.2d 317, 320 (1982), *accord, Callas v. Armstrong County Board of Assessment*, 70 Pa. Commonwealth Ct. 272, 275, 453 A.2d 25, 26 (1982).

In *Callas*, as both parties correctly note, this court held that although no explicit provision of the Fourth to Eighth Class County Assessment Law permits the correction of prior assessment errors, selective reassessment to correct errors will be presumed authorized based on both the intent of the assessment and upon the mandates of the uniformity provision of the Pennsylvania Constitution, *Id.* at 276-77, 453 A.2d at 27. Neither side contends a statutory exception justifies the reassessment.[5] The issue in this case is solely

of comparing the reassessed assessment property with comparable properties. The "cost and design factor" was not commented on by Mr. Richter, but is mentioned on the record card.

[5] "Section 602.1, [of the Assessment Law,] 72 P.S. §5453.602(a), provides for periodic changes in the valuation of *individual* parcels under the following circumstances: (1) when improvements are

whether the selective reassessment performed on appellants' house fits into the *Callas* exception.

We find that the lower court erred as a matter of law in finding the reassessment fit the *Callas* exception. Although the initial factors of an undiscovered second chimney and recently enclosed porch might arguably have been the *animus* for adjusting appellants' assessment, the *corpus* of the operation thereafter performed on appellants' tax card exceeded the mere correction of "clerical or mathematical assessment errors" contemplated by *Callas*. *Id.* at 277, 453 A.2d at 27. The power under *Callas* to correct mistakes does not permit the application of a tax increase under the guise of an updated methodology of assessment.

It is clear from Chief Assessor Richter's testimony that the purpose of this portion of the reassessment was not to correct mistakes in the 1972 reassessment, but to bring the assessment on the house into line with the current market value. The intent of the Board was evidenced by the notation on the appellants' property tax card, which stated; "4/14/80—CHANGED GRADE and C + D TO BRING HIS HOUSE INTO UNIFORMITY WITH OTHERS OF ITS TYPE —FOR EXAMPLE—17/11B/2/21 [another property tax ID number]."

Although appellees assert these changes were made "uniformly", the new grade factor and depreciation factor methodology was only applied to reassessments initiated in the course of error correction, meaning that appellants' home is being assessed using a post-

---

made to or removed from a property; (2) when land is divided and conveyed in smaller parcels or (3) when the economy depreciates or appreciates to such an extent that real estate values, in general, are affected." *Carino v. Board of Commissioners of Armstrong County*, 79 Pa. Commonwealth Ct. 242, 245, 468 A.2d 1201, 1203 (1983) (emphasis in original).

1980 methodology while other similar homes are being assessed using a 1972 methodology.[6] It is clear from the record that the commissioners or the Chief Assessor had authorized selective reassessment of appellants' house without formally instituting county-wide reassessment. The additional changes using an updated methodology constituted a selective reassessment which went beyond mere correction. The action, therefore, was without statutory authority. However, because part of the reassessment may have been legally permissible under *Callas,* the case will be remanded for proceedings consistent with this opinion.

### ORDER

AND Now, this 13th day of February, 1986, the order of the Court of Common Pleas of Monroe County, No. 4 Misc. C.P. 1981, dated October 3, 1984, is vacated, and the matter is remanded for further proceedings consistent with the foregoing opinion with instructions that any corrections to the assessment be made in accordance with the methodology in use at the time of the original (1972) assessment.

Jurisdiction relinquished.

Senior Judge KALISH dissents.

---

[6] *See* notes 3 and 4.