531 A.2d 542

Josephine Storey, Braintrim Township, Wyalusing Area School District and Wyoming County, Appellants *v.* Susquehanna County Board of Assessment, Appellee.

Argued September 12, 1986, before Judges MAC-PHAIL and PALLADINO, and Senior Judge BLATT, sitting as a panel of three.

*James E. Davis,* for appellants.

*Robert G. Dean,* for appellee.

OPINION BY JUDGE BLATT, September 18, 1987:

Josephine Storey, Braintrim Township, and Wyoming County (collectively, the appellants)[1] appeal an order of the Court of Common Pleas of Susquehanna County (trial court) which dismissed their appeal from an order of the Susquehanna County Board of Tax Assessment (Board). The Board had concluded that the manor house on the property owned by Mrs. Storey, which property was situate partly in Wyoming County and partly in Susquehanna County, was to be taxed in 1985 and subsequent years by Susquehanna County

---

[1] Wyalusing Area School District, a party before the trial court, has withdrawn from this appeal.

pursuant to Section 608 of The Fourth to Eighth Class County Assessment Law (Law).[2]

Mrs. Storey, a widow, has resided on the property concerned since August 1955 when she and her husband obtained title by virtue of a deed recorded in Wyoming County,[3] and taxes have been assessed against the property by Wyoming County since at least 1921. In 1985, however, Mrs. Storey received assessments from both Susquehanna and Wyoming Counties.[4] The Board, however, gave no notice of the Susquehanna County assessment to Wyalusing Area School District,[5] Braintrim Township, or Wyoming County, in contravention of Section 702(a) of the Law.[6] Mrs. Storey appealed this assessment to the Board, which, after a hearing on February 25, 1985, denied the appeal, again having given no notice of this action to Wyalusing Area School

---

[2] The Board concluded that the manor house on the property was located in Susquehanna County, rather than in Wyoming County, thereby establishing Susquehanna County as the proper taxing authority pursuant to Section 608 of the Law, act of May 21, 1943, P.L. 571, as amended, 72 P.S. §5453.608, which pertinently provides that: "[t]he chief assessor shall on all lands make the assessment in the county in which the mansion house is situated when county lines divide a tract of land. . . ."

[3] All records concerning the chain of title of the property are located in Wyoming County.

[4] Mrs. Storey paid the 1985 Wyoming County tax assessment.

[5] A change in the assessing county would necessarily result in a change in the taxing school districts.

[6] Section 702(a), 72 P.S. §5453.702(a) pertinently provides that:

When an appeal has been filed, the Board shall notify each person and each taxing district having an interest therein, of the time and place where he shall appear for the purpose of being heard. . . . Any political subdivision having an interest in the assessment may appear and be heard, either by its solicitor or counsel specially engaged for such purpose.

District, Braintrim Township, or Wyoming County. The appellants and Wyalusing Area School District thereafter appealed to the trial court, where hearings were held on September 26, 1985 and December 5, 1985, and the trial court received extensive evidence. The trial court thereafter concluded that their appeal was without merit.[7]

Findings of the trial court on *de novo* review of a tax assessment appeal are, of course, entitled to great weight and will be disturbed only upon a finding of clear error. *O'Merle v. Monroe County Board of Assessment,* 95 Pa. Commonwealth Ct. 141, 504 A.2d 975 (1986). The appellants contend here, however, that Susquehanna County failed to meet its burden of proof in order to overcome the historical evidence to the effect that Mrs. Storey's property should be taxed by Wyoming County. In support of this contention, they argue that the trial court erred in attributing "great weight" to the Commission Report of 1891 (Report of 1891) which established the boundary line between Lackawanna County and Susquehanna County.[8]

Preliminarily, we note that the boundary line at issue here, which is the southern boundary of Susquehanna County, was *first* established by an act of the legislature in 1810 (Act of 1810), and we will adopt that portion of the trial court's opinion which notes that:

> The County of Susquehanna was established by the legislature in the year of 1810. It has been bounded by four straight lines. The northern

---

[7] The trial court assigned the burden of proving that the manor house was located in Susquehanna County to that county.

[8] In 1899 a commission was established to survey and mark the disputed Lackawanna-Susquehanna County boundary line. This commission's report of 1891 was adopted by the common pleas courts of both counties, was never appealed, and, therefore, conclusively established that boundary line.

line approximates the forty-second degree North Latitude and is generally considered the boundary between the State of New York and the Commonwealth of Pennsylvania. The eastern boundary is a straight line where it abuts Wayne County. The western line is again a straight line; while it could not be considered technically rectangular, because of the contour of the earth, in a casual observation it would appear to be a rectangle. Reference to the county is set forth under Chapter XXX, an ACT to erect parts of Luzerne and Lycoming counties, into separate county districts, in the volume of 1810 of the Acts of the General Assembly of the Commonwealth of Pennsylvania, appellees' exhibit # 14, as follows:

SECT. II. And be it further enacted by the authority aforesaid, That so much of the county of Luzerne, as is included in the following lines; to wit, Beginning at the fortieth mile stone [sic] standing on the north line of the state and running south along the east line of Ontario [Bradford] county. To a point due east of the head of Wyalusing falls in the river Susquehanna; thence due east to the western line of Wayne county; thence northerly [sic] along the said western line of Wayne county to the aforesaid north line of the state; and thence west along the said state line to the fortieth mile stone [sic], the place of beginning; be, and the same is hereby erected into a separate county to be henceforth called Susquehanna county; and the place of holding the courts of justice in and for said county shall be fixed by the same commissioners who shall be appointed by the governor, in pursuance of the first section of this act, at any place at a distance

not exceeding seven miles from the center of the county, which may be most beneficial and convenient for the same.

*The southern line of Susquehanna County adjoins Lackawanna. County on the east and forms the northern boundary of Lackawanna County. To the west of Lackawanna County, the southern boundary of Susquehanna County is also the northern boundary of Wyoming County.* (Emphasis added.)

In 1842, however, a commission was appointed, pursuant to an Act of Assembly, to establish Wyoming County from a part of Luzerne County. In so doing, the commission issued a report (Report of 1842), which necessarily established the boundary line between Susquehanna and Wyoming Counties. Inasmuch as the boundary line, established pursuant to the Report of 1842, was located pursuant to a legislative mandate, we must review the trial court's opinion to determine whether or not the trial court properly observed a legislatively established boundary line, *i.e.,* the boundary line established pursuant to the Act of 1810 or the boundary line established pursuant to the Report of 1842,[9] in concluding that the manor house on Mrs. Storey's property was located in Susquehanna County.

The trial court, here pertinently stated that:

Ronald Gruzesky was accepted as an expert witness. . . . This witness prepared [Susquehanna County's] Exhibit # 16 which shows the southwest corner of Susquehanna County. He picked that up and ran a line south 82° and 15 minutes east. . . .

---

[9] Inasmuch as the boundary line located by the Report of 1842 was established subsequent to line located by the Act of 1810, we believe that if there is, in fact, any discrepancy between the two boundary lines, the line of 1842 would prevail.

And, we note that the southwestern corner of Susquehanna County is the northwestern corner of Wyoming County which was established both by the Act of 1810 and the Report of 1842. Mr. Gruzesky, however, merely read an excerpt from the Report of 1891, which referred to the Report of 1842. Moreover, the Report of 1891 related to a boundary line, *i.e.,* the Susquehanna County-Lackawanna County boundary line, different than the one at issue here. The report of 1891, therefore, conclusively established the Susquehanna County-Lackawanna County boundary line, but had no binding authority over the Susquehanna County-Wyoming County boundary line. The trial court nonetheless adopted the boundary line established by Mr. Gruzesky as the "true line" and concluded that Mrs. Storey's manor house was located in Susquehanna County when it stated that:

> [T]his discrepency [sic] between the legislative line and the actual line has long since been determined because in 1842 when Wyoming County was laid out, there was *no question* that its description exactly follows the present county line as it has been *determined* and followed in this case. This was noted by Mr. Gruzesky who had made a survey and a factual investigation on the scene. (Emphasis added.)[10]

---

[10] Although the trial court indicates that there was "no question" concerning the location of the Susquehanna County-Wyoming boundary line, our review of the record indicates that Mr. Gruzesky testified on cross-examination as to discrepancies concerning the border line, in pertinent part, as follows:

Q. Mr. Gruzesky, I believe I showed you this exhibit 14 at the previous hearing but I want to give you an opportunity to look at it again. Is this the map that you were referring to on your direct testimony as the ancient Wyoming County Map or the 1842 map?

The trial court, therefore, clearly relied on the Report of 1891 and Mr. Gruzesky's survey, both of which *referenced* the Report of 1842. In so doing, however,

A. I did not refer to this map in the items previously. I referred to the Highland map, assessment of the Wyoming County.

Q. You did make reference a minute ago to a map of 1842 that is the map where Wyoming County was separated from Luzerne County and I am asking if this was the map you referred to?

A. No.

Q. You did see this map though at the previous hearing, didn't you?

A. Yes, I did.

Q. You did make reference in your testimony to course on the Wyoming County map as being 150 rods. I want to ask you again to examine this map and tell me if the course that you identified as being 150 rods is shown on this Exhibit No. 14?

A. Yes, I think you are referring to the statement I made separating Wyoming County from Luzerne County being a southwest direction of two degrees, 150 rods or perches in this report.

Q. Would you agree with me, Mr. Gruzesky, and again I apologize . . . the Susquehanna County maps which show that same area between the two counties show that distance being different, don't they? They show that distance as being 160 rods instead of 150?

A. Yes, they do.

. . . .

Q. And will you agree with me by examination of this map, that there is a difference of 10 rods between the Wyoming County map of 1842 and all the Susquehanna County maps that you have referred to?

A. Yes.

Q. And one further point, you did not field survey that part of that particular line; did you?

A. No.

Mr. James W. Holbert, the appellant's witness, testified in pertinent part, that:

Q. So there is a variance between the 1810 statute and all the maps that we are looking at here this afternoon?

the trial court established the location of the Susque-
hanna County-Wyoming County boundary line without
relying on the actual Report of 1842.[11]

Accordingly, the trial court, rather than determining
the location of the manor house on Mrs. Storey's proper-
ty with relation to a legislatively established boundary
line between Susquehanna and Wyoming Counties,
simply established a boundary line on the basis of the
Report of 1891. In so doing, the trial court committed
an error of law.[12] Inasmuch as the trial court made no
findings concerning the location of the manor house
with relation to a legislatively established boundary

---

A. There is.

Q. We would agree on that point. Would it also be
correct to say that if we took that line that is indicated in
the Statute of 1810 and you extend that all the way across
Susquehanna County, Susquehanna County would lose
about a half-mile of territory all the way across that line?

A. It is possible.

[11] The record certified to this Court contains neither the maps
nor surveys referred to therein, and the only reference to the Re-
port of 1842 is contained in the trial court description of an excerpt
from the Report of 1891.

[12] Due to our disposition of this matter, we need not address
the appellants' other contentions that the doctrine of collateral es-
toppel prevents Susquehanna County from assessing taxes after
sixty years of taxation by Wyoming County; that notice of the Sus-
quehanna County tax was never given to Wyoming County, Brain-
trim Township, or Wyalusing Area School District in contravention
of Section 702(a) of the Law; and that Susquehanna County's assess-
ment amounts to an improper annexation of property without due
process of law. And, with regard to the appellants' argument that
the exclusive procedure to establish a disputed county boundary
must be initiated with a petition to the Commonwealth Court, pur-
suant to Section 302 of the Act of August 9, 1955, P.L. 323, as
repealed in part and amended by the Judiciary Act Repealer Act,
Act of April 28, 1978, P.L. 202, 16 P.S. §302, we note that no such
petition has been filed here.

line, and on the basis of the actual Report of 1842, we must remand this matter for those necessary findings.

ORDER

AND NOW, this 18th day of September, 1987, the order of the Court of Common Pleas of Susquehanna County in the above-captioned case is vacated, and this matter is remanded for further proceedings consistent with this opinion.

Jurisdiction relinquished.

Judge MACPHAIL dissents.