633 A.2d 1267

**Kerry W. ALTHOUSE and Mira S. Althouse, and
Louis J. Tencza and Donna M. Tencza**

v.

**COUNTY OF MONROE and Monroe County
Board of Assessment Appeals, Appellants.**

**Timothy J. McMANUS**

v.

**COUNTY OF MONROE and Monroe County
Board of Assessment Appeals, Appellants.**

Commonwealth Court of Pennsylvania.

Argued March 29, 1993.

Decided Nov. 5, 1993.

468

Mark S. Love, for appellants.

Timothy J. McManus, for appellees.

Before PELLEGRINI and FRIEDMAN, JJ., and NARICK, Senior Judge.

FRIEDMAN, Judge.

The County of Monroe (County) and the Monroe County Board of Assessment Appeals (Board) (collectively, Taxing Authorities) appeal from an order of the Court of Common Pleas of Monroe County requiring the Board to reduce the fair market and assessed values of four land parcels within a residential subdivision of the County. We affirm.

Kerry and Mira Althouse, Louis and Donna Tencza, and Timothy McManus (collectively, Taxpayers) each own lots in the residential subdivision of Birnam Woods, Hamilton Township, Monroe County, Pennsylvania. Following a county-wide reassessment effective for the 1989 tax year, the assessed values of Taxpayers' properties were as follows:

| Owner | Lot No. | Tax Code | Assessed Value | Fair Market Value |
|---|---|---|---|---|
| Althouse | 306 | 7/8/1/35–20 | $3,800.00 | $15,200.00 |
| Althouse | 307 | 7/8/1/35–21 | $4,670.00 | $18,680.00 |
| Tencza | 107 | 7/8/1/35–9 | $4,320.00 | $17,280.00 |
| McManus | 106 | 7/8/1/35–1 | $4,540.00 | $18,160.00 |

At the time of the 1989 assessment, there had been insufficient sales within the subdivision to make an internal analysis of property values; thus, the above valuations were based on comparisons with properties outside the subdivision. Subsequent to the 1989 assessment, other property within the subdivision was sold at prices higher than the values originally assigned to Taxpayers' lots. When the Assessor's Office brought this to the Board's attention, the Board directed the Assessor's Office to reassess the lots pursuant to § 701 of the

Fourth to Eighth Class County Assessment Law (Law).[1]

Without instituting a formal county-wide reassessment, the Assessor's Office dramatically increased the assessed values of the lots for tax year 1991, as follows:

| Owner | Lot No. | Tax Code | Assessed Value | Fair Market Value |
|-------|---------|----------|----------------|-------------------|
| Althouse | 306 | 7/8/1/35–20 | $13,300.00 | $53,200.00 |
| Althouse | 307 | 7/8/1/35–21 | $15,640.00 | $62,560.00 |
| Tenczza | 107 | 7/8/1/35–9 | $15,440.00 | $61,760.00 |
| McManus | 106 | 7/8/1/35–1 | $15,290.00 | $61,160.00 |

Each of the taxpayers appealed to the Board, which made minor adjustments to the valuation of the McManus and Althouse lots but essentially denied the appeals. The Althouses and the Tenczas filed a joint appeal with the Monroe County Court of Common Pleas; McManus appealed separately. The trial court consolidated the appeals. Following a hearing, the trial court held that the Taxing Authorities were not authorized to reassess selected parcels without conducting a county-wide reassessment. Accordingly, the trial court directed the Board to reduce the assessed values of the lots in question to the amounts determined after the most recent county-wide reassessment.

On appeal to this court,[2] the Taxing Authorities contend that the trial court erred in determining that the Assessment Law

1. Act of May 21, 1943, P.L. 571, *as amended*, 72 P.S. § 5453.701. Subsection (a) provides in pertinent part:

    Upon receipt of the assessment roll from the assessor, or as soon thereafter as possible, the board shall examine and inquire whether the assessments and valuations have been made in conformity with the provisions of this act, and shall revise the same, increasing or decreasing the assessments and valuations as in their judgment may seem proper, and shall add thereto such property or subjects of taxation as may have been omitted ... The board shall, on or before the fifteenth day of July prepare an assessment roll or list of persons and property subject to local taxation, together with the value placed upon each person and each parcel or tract of real property....

2. This court's scope of review in a tax appeal is to determine whether the trial court abused its discretion, committed an error of law, or

did not allow them to reassess Taxpayers' lots without conducting a county-wide reassessment. In support of this argument, the Taxing Authorities point out that both taxpayers and municipalities may appeal from assessments [3] and they cite *Appeal of Meadowbrook Properties, Inc.,* 89 Pa.Commonwealth Ct. 341, 492 A.2d 766 (1985) for the proposition that, upon appeal, the Board and the courts may decrease or increase any assessment to reflect the fair market value of an appealed property. The Taxing Authorities also rely on *Callas v. Armstrong County Board of Assessment,* 70 Pa.Commonwealth Ct. 272, 453 A.2d 25 (1982), which held that taxing authorities were permitted to correct clerical or mathematical errors in order to effectuate uniform taxation as required by the Pennsylvania Constitution Art. VIII, § 1.[4]

Taxpayers, on the other hand, assert that the Board may reassess property under only the following circumstances: (1) when a county-wide reassessment is undertaken; (2) when the assessment is appealed, either by the taxpayer under § 701 of the Law, 72 P.S. § 5453.701, or by the municipality under § 706 of the Law, 72 P.S. § 5453.706; (3) when a downward adjustment is necessary under § 703c of the Law, 72 P.S. § 5453.703c [5]; (4) when one of the three conditions, set

rendered a decision unsupported by the evidence. *Appeal of Marple Springfield Center,* 530 Pa. 122, 607 A.2d 708 (1992).

3. Taxpayers are authorized to appeal from assessments pursuant to § 701 of the Law, 72 P.S. § 5453.701. Municipalities are authorized to appeal from assessments pursuant to § 706 of the Law, 72 P.S. § 5453.-706.

4. This section provides that "[a]ll taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws."

5. This section provides:
   Whenever through error an assessment is made more than fifty per cent greater than it should have been, and taxes are paid on such incorrect assessment, the board, upon discovery of such error and correction of the assessment may order a refund to the date of the commencement of the error.

forth in § 602.1 of the Law, 72 P.S. § 5453.602a, occurs [6]; or (5) to correct a mathematical or clerical error under *Callas*. According to Taxpayers, none of these circumstances applies here; thus, the reassessment of their properties was impermissible. We agree.

It is undisputed that the first four circumstances under which the Board may reassess property do not apply. Thus, the sole issue before us is whether the 1991 reassessment fits into the *Callas* exception.

In *Callas*, when the taxpayers acquired the subject property, the land was appraised at $300.00 per front-foot, although a previously completed county-wide reassessment established the front-foot valuation for land in that area as $500.00. The county assessor later adjusted the appraisal to reflect the correct front-foot value. On appeal by the taxpayers, we held that the Board of Assessment could correct clerical or mathematical assessment errors in order to achieve constitutionally-mandated uniformity with the existing assessment structure.

However, *Callas* is distinguishable from this case. First, the assessor in *Callas* rechecked property valuations *throughout the county* before determining that a valuation error had been made. Second, the correction merely brought the property assessment in line with the figure established in the prior county-wide reassessment; therefore, it was not a selective reassessment. Most importantly, the adjustment in valuation reflected a *clerical or mathematical error*, and not, as here, a perceived error in determining the market value of the property.

6. The Taxing Authorities concede that the reassessment of the subject properties was not occasioned by the occurrence of any event described at § 602.1 of the Law, 72 P.S. § 5453.602a, which provides:

> The board may change the assessed valuation on real property when (i) a parcel of land is divided and conveyed away in smaller parcels, or (ii) when the economy of the county or any portion thereof has depreciated or appreciated to such extent that real estate values generally in that area are affected, and (iii) when improvements are made to real property or existing improvements are removed from real property or are destroyed.

■ We agree with Taxpayers that *Callas* contemplated allowing such adjustments only to correct clerical or mathematical assessment errors, not to bring an assessment into line with the property's current market value. In *O'Merle v. Monroe County Board of Assessment Appeals*, 95 Pa.Commonwealth Ct. 141, 504 A.2d 975 (1986), this court recognized the limited nature of the *Callas* exception; we find *O'Merle* to be controlling here. In *O'Merle*, a representative of the assessor's office noticed that a certain house had two fireplaces, although the last county-wide assessment noted only one fireplace. Based on the additional fireplace and a recently-enclosed porch, appraisers increased the appraisal by forty-one percent. This court held that the reassessment was impermissible because it exceeded the mere correction of clerical or mathematical error allowed under *Callas*. Here, as in *O'Merle*, the true purpose of the reassessment was to bring the assessment into line with the houses' current market value, not to correct a clerical or mathematical error.

■ The Taxing Authorities attempt to distinguish *O'Merle* from the present case on the basis that, unlike the authorities in *O'Merle*, they rely on § 701 of the Act, 72 P.S. § 5453.701 as a statutory exception justifying reassessment. However, § 701 simply does not authorize selective reassessment to update property values.[7] Section 701(a) merely provides that, upon receipt of the assessment roll from the assessor, the Board may adjust and correct errors "as soon thereafter as possible," preparing its final assessment roll by the fifteenth day of July. By no means does this section authorize the Board to adjust and correct errors any time it wishes.

The Taxing Authorities also attempt to distinguish *O'Merle* from this case on the basis that the *O'Merle* reassessment was done using an updated method of valuation. We do not find this distinction to be significant. Here and in *O'Merle*, the taxing authorities wished to adjust the assessed value to make

7. See footnote 1, supra, for the text of § 701(a).

it reflect its current market value more accurately; this is impermissible without a county-wide reassessment.

The Taxing Authorities also suggest that the type of "error" they made in this case, i.e., failing to anticipate the kind of prices at which the other property in the Birnam Woods subdivision would be sold, is the most serious assessment valuation error imaginable and that it is absurd not to allow them to correct it. We disagree. To begin with, we note that the sales of the Birnam Woods lots at higher-than-anticipated prices occurred *after* the 1989 assessment of the subject properties. The Taxing Authorities' attempt to label the 1989 valuations as "erroneous" because circumstances changed later is contrived. In reality it is an attempt to *update* the assessment to reflect current market values. Moreover, even if the valuations were "erroneous," such error is not the type which may be corrected without a county-wide reassessment. The *Callas* exception is limited to clerical or mathematical errors.

The Law does not permit reassessment of property except in certain limited circumstances, none of which apply here. This court will not allow the Taxing Authorities to reassess property in violation of the Law. Accordingly, we affirm.

## ORDER

AND NOW, this 5th day of November, 1993, the order of the Court of Common Pleas of Monroe County dated June 24, 1992 is affirmed.