**Raymond R. VEES and Kathleen A. Vees, Appellants**

v.

**CARBON COUNTY BOARD OF ASSESSMENT APPEALS and Palmerton Area School District and Towamensing Township.**

Commonwealth Court of Pennsylvania.

Argued Dec. 8, 2004.

Decided Feb. 8, 2005.

Andrew J. Blady and Leonard B. Soko-love, Doylestown, for appellants.

Daniel A. Miscavige, Hazleton, for appellee, Carbon County Bd. of Assess. Appeals.

William G. Schwab, Lehighton, for appellee, Palmerton Area School District.

BEFORE: COLINS, President Judge, McGINLEY, J., PELLEGRINI, J., FRIEDMAN, J., COHN JUBELIRER, J., SIMPSON, J., and LEAVITT, J.

OPINION BY Judge SIMPSON.

Asserting that a local school district filed an improperly selective tax assessment appeal, Raymond R. Vees and Kathleen A. Vees (collectively, Taxpayers) appeal an order of the Court of Common Pleas of Carbon County (trial court) that increased the assessed value of Tax Parcel No. 16–56–A67 (Property) for the 2003 tax year. We affirm.

Carbon County performed a countywide reassessment effective for tax year 2001. The Property, which consists of 85 acres of unimproved land, was assigned a fair market value of $92,250.00. In April 2002, Taxpayers purchased the Property for $170,000.00.

In August 2002, the Palmerton Area School District (School District) appealed to the Carbon County Board of Assess-

ment Appeals (Board), contending the Property's fair market value should be $170,000.00. After hearing, the Board increased the Property's fair market value to $161,900.00. This had the effect of increasing the assessed value of the Property from $45,000.00 to $80,950.00 after application of the County's predetermined ratio of 50%.

Taxpayers appealed to the trial court. Their appeal did not challenge the constitutionality of any provision of The Fourth to Eighth Class County Assessment Law (Law)[1] or of The General County Assessment Law (GCAL).[2] Reproduced Record (R.R.) at 8a–9a, 37a–40a. Rather, Taxpayers alleged that the assessment was excessive and, "the assessment violated the requirement of uniformity and the same is discriminatory, and the assessment violates due process and equal protection of laws to [Taxpayers]." R.R. at 9a.

At a *de novo* hearing before the trial court, Taxpayers offered to prove the School District brings tax assessment appeals where a purchase price exceeds the current assessed value by $15,000.00. Taxpayers also offered to prove the intent of the School District in taking multiple tax assessment appeals is to correct what it perceives as economic valuation problems within its jurisdiction. The trial

court sustained a relevance objection. R.R. at 49a–56a, 114a–15a, 133a.

Regarding value of the Property, the School District presented the testimony of a real estate appraiser who opined the fair market value was $180,000.00. Raymond R. Vees testified on behalf of Taxpayers and confirmed he and his wife purchased the Property for $170,000.00.

The School District also presented the testimony of the County's Chief Assessor. He testified the County's common level ratio, as determined by the State Tax Equalization Board (STEB), was 45%, and the County's predetermined ratio, as determined by the County Commissioners, was 50%.

■ At the conclusion of the hearing, the trial court adopted the Board's fair market value of $161,900.00. After application of the County's predetermined ratio of 50%, the trial court set the assessed value at $80,950.00. Taxpayers appealed.[3]

Taxpayers argue the appeal which prompted the Board to increase the Property's assessed value constitutes a spot reassessment in violation of the uniformity clause of the Pennsylvania Constitution and the equal protection clause of the United States Constitution.[4] They also challenge the trial court's exclusion of their proffered evidence. Significantly,

1. Act of May 21, 1943, P.L. 571, *as amended,* 72 P.S. §§ 5453.101–5453.706.

2. Act of May 22, 1933, P.L. 853, *as amended,* 72 P.S. §§ 5020–101–5020–602.

3. Our review of tax assessment matters is limited to determining whether the trial court abused its discretion, committed an error of law, or reached a decision not supported by substantial evidence. *Green v. Schuylkill County Bd. of Assessment Appeals,* 565 Pa. 185, 772 A.2d 419 (2001).

Pennsylvania School Boards Association participates as *amicus curiae.*

4. The uniformity clause of the Pennsylvania Constitution, Article VIII, Section 1 provides, "[a]ll taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws." The equal protection clause of the United States Constitution provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Alleged violations of the equal protection and uniformity clauses are analyzed in the same manner. *Appeal of Armco, Inc.,* 100 Pa.Cmwlth. 452, 515 A.2d 326 (1986).

Taxpayers do not claim any statutory provision is unconstitutional. Nor do they challenge any fact found by the trial court, such as the finding of fair market value or of the applicable ratios.

## I.

■ As to the evidentiary issue, we conclude the trial court did not abuse its discretion in declining to receive evidence on the School District's general appeals strategy or on the School District's intent in taking other appeals. Here, the appeal was limited to valuation of the Property. Importantly, Taxpayers did not challenge the constitutionality of any statute and did not attempt to offer comparables evidence, which may have invited consideration of process beyond that pertaining to their Property.

■ A taxpayer alleging that the administration of a tax violates its rights to be taxed uniformly with others of its class must demonstrate deliberate, purposeful discrimination in the application of the tax before constitutional safeguards are violated. *Appeal of Armco, Inc.*, 100 Pa. Cmwlth. 452, 515 A.2d 326 (1986). Assuming for the current discussion only that an appeal constitutes administration of a tax, Taxpayers here needed to prove the School District deliberately and purposefully discriminated against them in taking the appeal, or the Board deliberately and purposefully discriminated against them in handling the appeal. The School District's practice and intent in other cases does not clearly establish deliberate discrimination in this appeal, and the information tends to confuse the issues. Therefore, the trial court could properly conclude the danger of confusion outweighed the probative value of the proffered evidence. Pa.R.E. 403.

## II.

### A.

■ As to the substantive issue, Taxpayers contend the Board violated their rights when on appeal it changed the value of the Property. They argue that Section 602.1 of the Law,[5] 72 P.S. § 5453.602a, limits the circumstances in which a board may change assessed valuation on property, and a recent sale is not among those circumstances.

Taxpayers' argument is without merit. Here, neither the County nor the Board initiated any revaluation of the Property; rather, the process was initiated by School District's appeal. This distinction is significant for two reasons. First, the revaluation was not initiated by a body possessing the power to prepare or revise assessment rolls, value property, change the value of property, or establish the predetermined ratio,[6] all essential elements of the assessment process. *See Millcreek Township Sch. Dist. v. Erie County Bd. of Assessment Appeals*, 737 A.2d 335 (Pa.Cmwlth. 1999).

Second, the statutory provision upon which Taxpayers rely deals with assessment procedures, not appeals. A different statutory provision specifically addressing appeals controls here. Section 702 of the Law expressly covers "any appeal of an assessment" and, among other things, requires the Board to make a finding as to the market value of the property as of the date such appeal was filed. 72 P.S. § 5453.702(b)(1).

As a matter of law, the Board's compliance with this statutory mandate is not deliberate, purposeful discrimination.

---

**5.** *Added by* the Act of January 18, 1952, P.L. (1951) 2138.

**6.** *See* Sections 601–602a of the Law, 72 P.S. §§ 5453.601–5453.602a.

This is especially true here, where the constitutionality of Section 702 of the Law is not challenged.

Otherwise, Taxpayers did not attempt to prove that the Board deliberately and purposefully discriminated against them, nor do they advance that argument now. The record only contains information that the Board acted on an appeal and made a decision based on information submitted to it. Therefore, it is not surprising that the trial court made no findings regarding deliberate, purposeful discrimination by the Board. Further, it is clear that Taxpayers did not prove constitutional violations by the Board.

## B.

Taxpayers attempted to prove the School District violated their rights by filing a selective appeal based on its perception that the Property was undervalued. They rely on cases discussing spot reassessments.

We conclude, however, that the cases Taxpayers cite do not control. On the contrary, a statutory provision allowing school districts the same appeal rights as property owners, and cases applying the provision, compel the conclusion that the School District did not deliberately and purposefully discriminate against Taxpayers.

### 1.

■ As a general proposition, selective reassessment or "spot reassessment" by a body clothed with the power to prepare or revise assessment rolls, value property, change the value of property, or establish the predetermined ratio is improper. *Althouse v. County of Monroe*, 159 Pa. Cmwlth. 467, 633 A.2d 1267 (1993) (applying Law, county assessor's office improperly increased valuations of properties in one subdivision); *O'Merle v. Monroe County*

*Bd. of Assessment Appeals*, 95 Pa.Cmwlth. 141, 504 A.2d 975 (1986) (applying Law, county assessor's office improperly increased assessment of one property to include improvements); *Callas v. Armstrong County Bd. of Assessment*, 70 Pa.Cmwlth. 272, 453 A.2d 25 (1982) (applying Law, county assessor properly corrected assessment of one property as part of countywide accuracy check). *See also McCrady v. Bd. of Property Assessment*, 827 A.2d 522 (Pa.Cmwlth.2003), *appeal denied*, 577 Pa. 691, 844 A.2d 554 (2004) (applying Second Class County Assessment Law and GCAL, county assessor improperly revised assessment of one property); *Radecke v. York County Bd. of Assessment Appeals*, 798 A.2d 265 (Pa.Cmwlth.2002) (applying Second Class A and Third Class County Assessment Law, county appraiser improperly revalued one property to include improvements). Similarly, such a body must use the same methodology to value all property in a county, and it may not reassess values in part of the county. *City of Lancaster v. County of Lancaster*, 143 Pa.Cmwlth. 476, 599 A.2d 289 (1991) (applying Second Class A and Third Class County Assessment Law and GCAL). These cases all deal with activity initiated by an entity enjoying the power of assessment. Collectively, the cases provide that assessors and the board cannot reassess less than an entire county except as correction of errors or as otherwise specifically provided by statute. None of these cases concerns an alleged defect in an appeal.

In addition, Taxpayer's rely on *Wilkinsburg Sch. Dist. v. Bd. of Property Assessment*, 797 A.2d 1034 (Pa.Cmwlth.2002), *appeal denied*, 573 Pa. 681, 822 A.2d 706 (2003). In *Wilkinsburg*, Allegheny County, a county of the second class with significant assessment problems, instituted a countywide freeze on all assessments. By

formal resolution, the board adopted the freeze except in specified circumstances. Despite the freeze, a county assessor reassessed a property without the occurrence of one of the recognized exceptions. On appeal by the property owner, the board rolled back the assessment. A school district appealed to the trial court, which concluded the board properly applied its resolution and entered partial summary judgment for tax years during which the freeze applied. We affirmed, holding the trial court did not err in supporting uniform adherence to the freeze resolution.

*Wilkinsburg* is easily distinguished from the current case both legally and factually. Unlike the legal issue in the current case, which raises an alleged defect in an appeal, in *Wilkinsburg* we addressed an improper reassessment initiated by the county. We decided any result other than uniform application of the freeze would have the practical effect of sanctioning an improper spot reassessment by the county. Moreover, the unusual facts in *Wilkinsburg*, which included assessment freezes pending countywide reassessment, distinguish that case from the present controversy.

**2.**

■■ As noted, the present controversy was initiated not by an assessor's action but by an appeal. Therefore, the statutory provisions covering appeals control. Section 706 of the Law, 72 P.S. § 5453.706, provides:

The corporate authorities of any county, borough, town, township or school district, which may feel aggrieved by any assessment of any property or other subject of taxation for its corporate purposes, shall have the right to appeal therefrom, in the same manner, subject to the same procedure and with like effect as if such appeal were taken by a taxable with respect to his assessment, and in addition may take an appeal from any decision of the board or court of common pleas as though it had been a party to the proceedings before such board or court, even though it was not such a party in fact.

Interpreting this clear legislative directive, this Court holds school districts which feel aggrieved by any property assessment have the right to appeal in the same manner, subject to the same procedure and effect, as if the appeal was pursued by an individual property owner. *Richland Sch. Dist. v. County of Cambria Bd. of Assessment Appeals*, 724 A.2d 988 (Pa.Cmwlth. 1999).

*Millcreek*, 737 A.2d 335, is instructive. There, an *en banc* panel of this Court specifically rejected a property owner's argument that the prohibition against spot reassessments applies to appeals by school districts. In *Millcreek*, ·the county did not initiate a new assessment; rather, a school district initiated an appeal, which the board denied. The trial court also dismissed the appeal, concluding to permit the school district to appeal would violate the uniformity clause. We reversed, concluding that school districts lack the power to assess, and therefore the prohibition against spot reassessment does not apply to appealing school districts.

Additionally, in *Millcreek* we rejected the argument that absent a "triggering event" listed in the applicable statute,[7] the school district could not appeal a property assessment. We held school districts retain the same appeal and procedural due

**7.** Section 6.1 of the act known as the Second Class A and Third Class County Assessment Law, Act of June 26.1931, P.L. 1379, *as amended*, 72 P.S. § 5347.1. Section 602.1 of the Law, 72 P.S. § 5453.602a, corresponds to this provision in counties of the fourth through eighth classes.

process rights as individual property owners. As such, neither a property owner nor a taxing district is prohibited from appealing an assessment event even though no triggering event occurred. The "[e]xercise of appeal rights by both the [school] district and the property owner, will ensure that the uniformity required by our state constitution is maintained." *Id.* at 339.

As a matter of law, the School District's use of the statutory appeal mechanism available uniformly to all interested parties does not amount to deliberate, purposeful discrimination. This is especially true here, because Taxpayers do not challenge the constitutionality of Section 706 of the Law. Moreover, pursuant to *Millcreek,* the filing of a tax assessment appeal by a school district does not amount to an improper spot assessment.

As a matter of fact, the trial court made no findings regarding deliberate, purposeful discrimination by the School District. Considering the foregoing, Taxpayers did not prove a constitutional violation by the School District taking this appeal.

### 3.

■ In *Millcreek* we did not decide whether the result of an appeal by a school district can create an unconstitutional lack of uniformity. Thus, we did not decide whether a successful appeal by a school district where property values are increased has an unconstitutional effect. We now hold that the result here does not create an unconstitutional lack of uniformity.

■ A taxpayer should pay no more and no less than his proportionate share of the cost of government. *Deitch Co. v. Bd. of Property Assessment, Appeals and Review of Allegheny County,* 417 Pa. 213, 209 A.2d 397 (1965). Implementation of this principle would require that an owner's assessment be reduced so as to conform to the common level of assessment in the taxing district. *Id.*

■ The constitutional mandate requiring uniformity is satisfied when the taxing authority assesses all property in the taxing district at the same percentage of its actual value. *Appeal of Johnstown Assocs.,* 494 Pa. 433, 431 A.2d 932 (1981). Application of such a uniform ratio assures each taxpayer will be held responsible for its pro rata share of the burden of local government. *Id.*

Section 704(c) of the Law, 72 P.S. § 5453.704(c), applies to appeals and provides in pertinent part:

(c) The court, after determining the market value of the property pursuant to subsection (b)(1), shall then apply the established predetermined ratio to such value unless the corresponding common level ratio determined pursuant to subsection (b)(2) varies by more than fifteen per centum (15%) from the established predetermined ratio, in which case the board shall apply the respective common level ratio to the corresponding market value of the property.

Here, the fair market value of the Property was reduced by a uniform ratio, the County's predetermined ratio. That ratio is "the ratio of assessed value to market value established by the board of county commissioners and uniformly applied in determining assessed value in any year." Section 102 of the Law, 72 P.S. § 5453.102. As there is no contest to the accuracy or applicability of this ratio, its use satisfies the requirement of uniformity in the appeal.

Further, we are guided by our recent decision in *Baechtold v. Monroe County Bd. of Assessment Appeals,* 804 A.2d 713 (Pa.Cmwlth.2002), where a uniformity challenge was raised. As here, the prop-

erty owners did not contest the market value of their property or the county's established predetermined ratio. Also as here, they did not prove the statutory mechanism was unreasonable or otherwise violates any constitutional right. We rejected the uniformity challenge in *Baechtold*, as we reject it here.

Accordingly, we affirm the trial court's order.

### ORDER

AND NOW, this 8th day of February, 2005, the order of the Court of Common Pleas of Carbon County is **AFFIRMED.**

## DISSENTING OPINION BY Judge FRIEDMAN.

I respectfully dissent. The majority holds that the Carbon County (County) Board of Assessment Appeals' (Board) reassessment of eighty-five acres of unimproved land (Property) owned by Raymond R. Vees and Kathleen A. Vees (collectively, Taxpayers) does not violate the uniformity clause of the Pennsylvania Constitution or the equal protection clause of the United States Constitution. (Majority op. at 749–50.) For the following reasons, I disagree.

Taxpayers paid $170,000 for the Property in 2002, and the Board assessed the Property at $45,000 based on a market value of $90,000 [1] and an established predetermined ratio (EPR) of 50%. However, on August 14, 2002, the Palmerton Area School District (School District) appealed that assessment. After a hearing on the matter, the Board reassessed the Property at $80,950 based on a market value of $161,900. Taxpayers appealed to the trial court, which held a *de novo* hearing and also assessed the Property at $80,950. Taxpayers now appeal to this court.

Taxpayers argue that the Board's reassessment of the Property violates constitutional principles of uniformity and equal protection because the Board utilized a different methodology for its original valuation of the Property than it used for the reassessment following the School District's appeal.[2] There is no question that counties use different methodologies to value properties in county-wide assessments as opposed to assessment appeals. Section 602(a) of The Fourth to Eighth Class County Assessment Law (Law)[3] sets forth the methodology which counties must utilize in county-wide assessments, and sections 702 and 704 of the Law set forth a different methodology which boards and courts must utilize in assessment appeals.[4] 72 P.S. §§ 5453.702, 5453.704.

1. In assessing the Property, the Board apparently used the Property's base year market value, i.e., the market value for the 2001 tax year, the year in which the County last conducted a county-wide reassessment. *See* section 602(a) of The Fourth to Eighth Class County Assessment Law, Act of May 21, 1943, P.L. 571, *as amended*, 72 P.S. 5453.602(a).

2. The majority does not address whether the Board's use of a different tax assessment methodology violates the constitutional principles of uniformity and equal protection. However, Taxpayers present this argument in their brief with bold letters and underlining as follows: *"[A] governmental body must apply the same methodology for valuing real property to all property within its jurisdic-*

*tion."* (Taxpayer's brief at 13.) Moreover, Taxpayers then argue that, under *Wilkinsburg School District v. Board of Property Assessment*, 797 A.2d 1034 (Pa.Cmwlth.2002), *appeal denied*, 573 Pa. 681, 822 A.2d 706 (2003), "appeals cannot cause a taxpayer to be reevaluated using different methodology than that of the rest of the property on the assessment roll." (Taxpayer's brief at 14.) Thus, I question the majority's failure to discuss this issue.

3. Act of May 21, 1943, P.L. 571, *as amended*, 72 P.S. 5453.602(a).

4. The majority states repeatedly that Taxpayers have not challenged the constitutionality

## I.  The Statute

### A.  Original Assessment

Section 602(a) of the Law requires that a county value real property according to its "actual value." 72 P.S. § 5453.602(a). To arrive at the "actual value," the county may utilize the current market value or base year market value, the latter being the market value determined in the most recent county-wide assessment. If the county chooses to utilize the current market value, the county may consider sale prices in the current taxable year, and if the county chooses to utilize the base year market value, the county may consider sale prices in the base year. However, the sale prices are *not* controlling; rather, they are "subject to revision by increase or decrease to accomplish equalization with other similar property within the county." *Id.* Moreover, the county must consider: (1) the reproduction or replacement cost, as applicable, less depreciation and all forms of obsolescence; (2) comparable sales; and (3) income. *Id.*

Once the county has determined the "actual value" of the property, the county applies the EPR, not exceeding 75% of "actual value," to determine the property's assessed value. *Id.* A board may change the assessed value only when: (1) a parcel of land is divided and conveyed away in smaller parcels; (2) the economy of the county or any portion thereof has depreciated or appreciated to such extent that real estate values generally in that area are affected; and (3) improvements are made to real property or existing improvements are removed from real property or are destroyed. Section 602.1 of the Law, added by the Act of January 18, 1952, P.L. (1951) 2138, 72 P.S. § 5453.602a.

### B.  Reassessment on Appeal

Sections 702 and 704 of the Law require that, in an assessment appeal, the adjudicator: (1) determine the "market value as of the date such appeal was filed before the board"; (2) determine the common level ratio published by the State Tax Equalization Board (STEB) on or before July 1 of the year prior to the tax year being appealed; and (3) apply the EPR to the market value unless the EPR varies from the STEB ratio by more than 15%, in which case apply the STEB ratio to the market value. 72 P.S. §§ 5453.702, 5453.704.

### C.  Three Differences

In other words, although the County may utilize the base year market value in its original valuation of a property, the County *never* utilizes the base year market value in an assessment appeal. Moreover, although the County may utilize the *current* market value in the County's original valuation of a property, the County *never* utilizes the current market value *as of the date of the assessment appeal,* which, at the time of the County's original valuation, is actually the property's *future* market value. Finally, although the County utilizes only the EPR in its original valuation of a property, the County may be required to utilize the STEB ratio in an assessment appeal.

## II.  Case Law

### A.  Appeal of Armco

In *Appeal of Armco, Inc.,* 100 Pa. Cmwlth. 452, 515 A.2d 326 (1986), *appeal*

---

of these statutory provisions. (*See* Majority op. at 745, 746, 747, 749.) I agree that Taxpayers do not raise a facial challenge to the constitutionality of the provisions. However, having questioned the Board's use of a differ-ent methodology to reassess their Property in the School District's assessment appeal, Taxpayers clearly challenge the constitutionality of the statutory provisions as applied to them.

*denied,* 516 Pa. 643, 533 A.2d 714 (1987), a trial court utilized a county's STEB ratios of 23.9% and 26.9% instead of the EPR of 75% to reduce a board's reassessments on two properties. In doing so, the trial court simply followed section 704 of the Law, which requires that a trial court use the STEB ratio when the EPR varies from the STEB ratio by more than 15%.

The county filed an appeal with this court, arguing that section 704 of the Law is unconstitutional because it results in the discriminatory treatment of taxpayers. The county asserted that section 602 requires one method of assessing real estate, and section 704 requires a different method only as to those taxpayers who appeal. More specifically, the county maintained that, once it adopted the method of applying the EPR to base year market value, the county could not change methods for taxpayers who filed appeals by applying the STEB ratio to the current market value.

An *en banc* panel of this court rejected the county's argument. The court explained that section 602 provides an efficient administrative method of assessing real estate by allowing a county to apply the EPR to base year market value. However, the assessment method is imperfect because base year market value may not reflect current year market value. On the other hand, section 704 provides a method for reviewing administrative assessments so that they reflect the reality

of appreciation or depreciation in property value. Although section 704 reassessments utilize current market values instead of base year market values, *the STEB ratio converts current market values to equivalent base year assessed values. Id.* In other words, the constitutional goal is uniform *assessed* values, and the application of the STEB ratio to current market values under section 704 results in uniform assessed values.[5]

In *Armco,* because the EPR varied more than 15% from the STEB ratio, the trial court was required to apply the STEB ratio to obtain a uniform assessed value. Here, however, the County's EPR of 50% does *not* vary by more than 15% from the STEB ratio of 45%. Therefore, the Board and the trial court did *not* apply the STEB ratio to obtain a uniform assessed value. This means that, while the average property owner in the County is paying taxes based on an assessed value that is 45% of the market value of the property, Taxpayers must pay taxes based on an assessed value that is 50% of the market value of the Property.

Because *Armco* requires application of the STEB ratio to ensure the uniformity of assessed values and because the STEB ratio was not applied in this case, I would conclude that the reassessment of Taxpayers' Property on appeal is in violation of the constitutional requirement for tax uniformity.[6]

---

**5.** It is clear that the court in *Armco* was concerned that assessments reflect the reality of property appreciation and depreciation. Obviously, this reality is reflected in the determination of a property's *current* market value, as opposed to the base year market value, but property appreciation and depreciation is also reflected in the STEB ratio. The STEB common level ratio is based on the bona fide real estate sales in a county for the prior calendar year. Thus, if the bona fide real estate sales in a county for a given year show a 5%

increase in property values, the STEB ratio will be 5% less than the ratio for the preceding year.

**6.** In *Downingtown Area School District v. Chester County Board of Assessment Appeals,* 819 A.2d 615 (Pa.Cmwlth.2003), *appeal granted in part,* 577 Pa. 420, 846 A.2d 74 (2004), the trial court assessed the taxpayer's property using the EPR of 100% instead of the STEB ratios of 89.8% and 85.2%. The taxpayer argued that the application of the EPR instead

## B. City of Lancaster

In *City of Lancaster v. County of Lancaster,* 143 Pa.Cmwlth. 476, 599 A.2d 289 (1991), *appeal denied,* 530 Pa. 634, 606 A.2d 903 (1992), the county reassessed ten of its sixty taxing districts because they had a common level ratio that was 15% greater than or less than the county's STEB ratio. In doing so, the county utilized current market values while continuing to utilize base year market values for the other districts.[7] This court stated that the statute "does not provide authority for a county that utilizes base year market value to suddenly begin injecting current market value into the formula in a selected group of taxing districts without applying the same methodology to all property in the county." *Id.* at 296. This court also concluded that, in utilizing a different method of valuation in the ten districts, the county violated the constitutional requirement for tax uniformity.[8] *Id.*

Although *City of Lancaster* does not involve the reassessment of properties on appeal, if utilizing base year market values for some properties and current year market values for others violates the constitutional requirement for tax uniformity, it

does not matter whether the violation occurs before or after an assessment appeal.[9] The use of two different methods creates a lack of uniformity in either case. Thus, although the Law may permit the use of two different valuation methods, the constitution does not.

## C. Wilkinsburg School District

In *Wilkinsburg School District v. Board of Property Assessment,* 797 A.2d 1034 (Pa.Cmwlth.2002), *appeal denied,* 573 Pa. 681, 822 A.2d 706 (2003), the board resolved that, to remedy any inequities that may have developed over the years, it would freeze assessments unless there were new buildings, construction, improvements or subdivisions on a property. Nevertheless, the board increased the assessed value of a property which had no new buildings, construction, improvements or subdivisions. The property owner filed an appeal with the board, and the board rolled back the assessment. The school district then appealed to the trial court, which, because of the board's resolution, dismissed the appeal. The school district took a further appeal to this court, which affirmed the trial court.

---

of the STEB ratio violated principles of uniformity and equal protection. This court held only that the application of the EPR complied with the statute because it varied from the STEB ratio by less than 15%. This court did not specifically examine whether the 15% variation allowed by the statute satisfies the constitutional requirement for tax uniformity.

7. Because the EPR varied by more than 15% from the STEB ratio in the ten taxing districts, these districts were the most non-uniform districts in the county. Moreover, because of the 15% variance, the county would have applied the STEB ratio to the current market value to obtain a uniform assessed value. *See Armco.*

8. Likewise, in *City of Harrisburg v. Dauphin County Board of Assessment Appeals,* 677 A.2d 350 (Pa.Cmwlth.1996), *appeal denied,* 548 Pa. 620, 693 A.2d 590 (1997), the county reas-

sessed rehabilitated properties in the city utilizing current market values while continuing to assess properties which had not been rehabilitated at base year market values. This court held that the reassessments violated the constitutional requirement for tax uniformity. *Id.*

9. In *City of Lancaster,* the use of the STEB ratio did not cure the lack of uniformity in the valuation method. Although this may seem to conflict with this court's holding in *Armco,* we note that the focus in *Armco* was on whether the use of the STEB ratio in an assessment appeal violated the constitutional requirement for tax uniformity. The court did not address whether a different valuation method, by itself, would violate tax uniformity requirements.

In affirming the trial court, this court recognized that a governmental body must apply the same methodology for valuing real property to all property within its jurisdiction. This court then stated:

Here, the Board stipulated that the event that would trigger a new assessment was a new building, construction, improvements, or subdivisions. There had been no such event that would cause an increase in the property's value. *Any successful appeal by the school district (or any other taxing body) ... for any reason except the three triggering events would result in a de facto spot assessment.*

The school district's remedy was to attack the legality of the freeze, *not to take an action [i.e., file an assessment appeal] that would create a different methodology for* **one** *property owner.* A tax assessment freeze was in place.... Property tax appeals could commence if the triggering events occurred. Here, none did.[10]

*Id.* at 1036 (emphases added). Thus, under *Wilkinsburg,* **in an assessment appeal,** a board or trial court would violate the constitutional requirement for tax uniformity if the board or trial court were to treat a single taxpayer unlike other similarly situated taxpayers by utilizing a different "methodology" to assess his or her property.[11]

### III. Conclusion

A board violates the constitutional requirement for tax uniformity when it utilizes different methodologies to value property within its jurisdiction. *City of Lancaster.* This is true whether different methodologies are applied before or after the taking of an assessment appeal. *Wilkinsburg.* Although the use of the STEB ratio may result in a uniform assessed value, *Armco,* the use of the STEB ratio does not cure the lack of uniformity caused by the use of different valuation methods. *City of Lancaster.*

Here, the County utilized the current market value as of the date of the Board appeal and applied the EPR to assess Taxpayers' Property. However, the County utilized the base year market value and EPR to assess other properties. I submit that this violates the constitutional requirement for tax uniformity.

Accordingly, I would reverse.

President Judge COLINS joins in this dissent.

**10.** In *Millcreek Township School District v. Erie County Board of Assessment Appeals,* 737 A.2d 335 (Pa.Cmwlth.1999), *appeal denied,* 563 Pa. 668, 759 A.2d 389 (2000), this court held that a school district has a statutory right to appeal any tax assessment by which it is aggrieved. Thus, I understand *Wilkinsburg* to say only that a school district taking an appeal cannot prevail where the board has established certain triggering events for a reassessment, and none of those events has occurred.

**11.** The different "methodologies" in *Wilkinsburg* were: (1) freezing an assessment unless a triggering event occurred, which, in effect, means utilizing the methodologies, market values and ratios used in the previous year; and (2) determining the current market value at the time of the appeal to the board and then applying either the EPR or STEB ratio.