## Baltimore & Ohio Railroad Appeal.

Argued September 29, 1961. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN and ALPERN, JJ.

reargument refused December 27, 1961.

*Vincent M. Casey,* with him *Margiotti & Casey,* for appellant.

*John F. Murphy,* Assistant County Solicitor, with him *Maurice Louik,* County Solicitor, for Allegheny County, appellee.

OPINION BY MR. JUSTICE EAGEN, November 14, 1961:

These appeals by the B. & O. Railroad involve the validity of tax assessments levied against improved real estate of which it is possessed in the City of Pittsburgh.

The Department of Highways of the Commonwealth of Pennsylvania, in the course of construction of the Penn-Lincoln Parkway East in December 1951, found it necessary to condemn and appropriate certain land and facilities of the railroad located in the City of Pittsburgh. In order to provide land upon which the railroad could relocate and re-establish its facilities, the Commonwealth condemned properties of others in the city. Deeds of conveyance were also obtained by the

Commonwealth from the latter landowners. The litigated assessments are levied against the land upon which the new facilities are located or under construction, and for the purpose of identification, it is designated in the record as Parcel 2-j-288. Upon all dates material, the record fee title has remained in the Commonwealth of Pennsylvania.

In connection with the relocation of the railroad facilities, the Commonwealth and the B. & O. Railroad entered into a written agreement on May 29, 1952. Therein, the Commonwealth agreed, inter alia, to pay all of the costs incident to the relocation; to furnish whatever land was necessary to effectuate the relocation and to deed in fee simple title to said land to the railroad. From a reading of the agreement, it is quite evident that the land upon which the railroad facilities were then proposed to be relocated had previously been approved by the parties to the agreement, and that it is the specific land involved in this issue. No date for the execution and delivery of the deed incident to the transition of the recorded title was specifically fixed and as yet such has not been effected.

On June 2, 1955, the B. & O. Railroad filed an application with the City of Pittsburgh for a permit to construct a warehouse building on the land which was provided by the Commonwealth for the railroad relocation purposes. On February 3, 1956, an application was filed for permission to construct thereon a railroad passenger station building.

When the land involved was first appropriated and condemned, The Board of Assessment, Appeals and Review of the County of Allegheny listed it as owned by the Commonwealth of Pennsylvania and classified it as exempt from taxation. Subsequently, as of January 1, 1956, the board assessed the subject property as follows:

B. & O. Railroad and/or Commonwealth
 of Penna. . . . . . . . . . . . . . . . . . . . . . .  $862,000.
Lot 159.81 Grant St. x avg.
 635.945 bet. 1st & Water
 St. (114,438 Sq. Ft.) . . . .  $780,000.
B. & O. Freight Station
 (unf.) . . . . . . . . . . . . . . .  68,000.
B. & O. Parking Lot Conc.
 Paving . . . . . . . . . . . . . . .  14,000.

The tax levy and assessment was continued in the exempt classification.

During the year 1956, the City of Pittsburgh requested the board to review the status of the assessment, specifically, the exempt classification. On October 26, 1956, the board entered an order changing the assessment from exempt to taxable for city and school purposes.[1] In other respects, the assessment remained unchanged. Notification of the change order was given to the railroad on November 26, 1956.

As of January 1, 1957, the property was assessed in the amount of $984,000, the records indicating that a freight station building had been constructed thereon and included in the valuation. As of January 1, 1958, the property was assessed in the amount of $1,160,300, the records indicating that other facilities were in the process of construction on the property. The amount of the assessment for 1959 was the same as for 1958. In the 1957, 1958, and 1959 assessments, the owners were listed as B. & O. Railroad and/or Commonwealth of Pennsylvania. The property was also listed as taxable for city and school purposes.

Appeals by the B. & O. Railroad from these assessments for the years 1956, 1957, 1958, and 1959, were

---

[1] The property continued to be listed as exempt from county taxes since property used for railroad purposes is not taxable by the county. This is not so as to the city except as to the actual right-of-way. See Act of January 4, 1859, P. L. 828.

dismissed by the court below. The legal correctness of the lower court's ruling is now before us on this appeal. No complaint is made as to the correctness of the valuation. The issue raised is whether or not the property so assessed is subject to taxation at all.

The appellant strenuously argues that real estate taxes follow the record or registered owner; that the City of Pittsburgh is a mere agency of the Commonwealth; that as such it lacks the power to tax real estate to which the sovereign holds title in the nature of a governmental function; and finally, that the appellant owns no estate in the land against which a legal assessment can be made. We cannot subscribe fully to this position.

In the first place, under the facts presented, it is the B. & O. Railroad which is the actual and real owner of the property. Any other conclusion would belie the facts. The railroad became the equitable owner thereof under the agreement of May 29, 1952. It took exclusive possession in the middle of the year 1955 and, then and there, assumed complete use for its own purposes, including the erection of buildings thereon. Its right to occupancy and use is unquestioned. The mere formality of executing and delivering the deed is all that is necessary to make the records conform to the facts. No antecedent conditions remained unperformed as to the conveyance of the fee. The Commonwealth has no actual estate in the property. It holds a mere naked title. Under its agreement, it is legally bound to convey the fee to the appellant. Why the latter has not insisted upon this formality does not appear.

When the Commonwealth appropriated the land and facilities of the railroad, it was legally obliged under the provisions of the Act of June 1, 1945, P. L. 1242, as amended, 36 PS §670-412, to provide a substitute and favorable property for relocation purposes. The Commonwealth appropriated and took record title to

the land involved in order to carry out this legal obligation and solely for the use and benefit of the railroad.

The General County Assessment Law of May 22, 1933, P. L. 853, as amended, 72 PS §5020-201 et seq., is the statutory basis for the assessment of all real estate subject to taxation. There is nothing contained therein that requires that real estate taxes be levied only against the recorded owner of the fee. In general, taxes are determined by ownership. It has long been the policy of the law that the real owner should be taxed: *No. Phila. Trust Co. v. Heinel Bros., Inc.,* 315 Pa. 385, 172 Atl. 692 (1934). The actual owner, who is not the record owner, may be assessed unless exempt from taxation: *Pennsylvania Stave Company's Appeal,* 236 Pa. 97, 84 Atl. 761 (1912) and *Bemis v. Shipe,* 26 Pa. Superior Ct. 42 (1904). The actual owner of the realty, whether registered or not, is liable for the taxes: *Fidelity-Phila. Trust Co. v. Land Title Bank and Trust Co.,* 326 Pa. 262, 192 Atl. 121 (1937). The right of the taxing authority to collect unpaid taxes from the registered owner is not exclusive and may be exercised against the real or beneficial owner: *No. Phila. Trust Co. v. Heinel Bros., Inc.,* supra, and *Pennsylvania Co. v. Bergson,* 307 Pa. 44, 159 Atl. 32 (1932). Also, an equitable interest in real estate is subject to taxation: *City of Philadelphia v. Myers,* 102 Pa. Superior Ct. 424, 157 Atl. 13 (1931). In the case of a contract for the conveyance of land, the burden of taxation as between the parties follows possession or the right thereto: *U. S. v. Certain Parcels of Land in Phila.,* 130 F. 2d 782 (1942).

Further, the fact that one of two possible parties, the record owner or the real owner, liable for a real estate tax, may for some reason be exempt from taxation will not defeat the right of the taxing power to enforce payment from the other. See, *Kittanning Academy v.*

*Kittanning Boro.,* 8 Pa. Superior Ct. 27 (1898) ; *County of Franklin v. McClean,* 93 Pa. Superior Ct. 165 (1928) ; *City of Philadelphia v. Myers,* supra, and *Fox Film Corp. v. Doyal,* 286 U. S. 123 (1932). Accord, *Mesta Machine Company Case,* 347 Pa. 191, 32 A. 2d 236 (1943).

It is, therefore, clear to us that the appellant is the real owner of the land involved and the immunity of the Commonwealth, if such exists in regard to this property, does not prevent the City of Pittsburgh from assessing and levying a property tax against the real owner.

The appellant further argues that the board had no legal authority to change the assessment for the year 1956. It contends, that the assessment having been made as of January 1, 1956, listing the property as exempt, that this was fixed and conclusive and could not be altered during the taxable year. But the board did not alter or change the assessment; it merely corrected the erroneous exempt classification. The physical facts of the assessment and the valuation were not changed, but only the legal conclusion of the board based on the facts as they existed on January 1, 1956. Under the Act of June 21, 1939, P. L. 626, as amended, 72 PS §5452.13, the board had the right and obligation to correct an error of this nature.

Order affirmed.