649 A.2d 154

The TRUSTEES OF the UNIVERSITY
OF PENNSYLVANIA, Appellant,

v.

BOARD OF REVISION OF TAXES OF the CITY
OF PHILADELPHIA and City of Philadelphia
and School District of Philadelphia.

Commonwealth Court of Pennsylvania.

Argued May 10, 1994.

Decided Oct. 7, 1994.

50

Joseph C. Bright, for appellant.

Alice W. Beck, for appellee.

Before DOYLE, and COLINS, JJ., and DELLA PORTA, Senior Judge.

DOYLE, Judge.

The Trustees of the University of Pennsylvania (University or Trustees) appeal from the Order of the Court of Common Pleas of Philadelphia County which affirmed a decision of the Board of Revision of Taxes of the City of Philadelphia (Board) denying the Trustees' application for exemption from taxation under Section 204 of the General County Assessment Law (Law).[1]

Following are the essential stipulated facts. The Trustees[2] claim a partial exemption from real estate taxes on a 1.2 acre parcel of land owned by the University as well as for a five-story retail/office building (Walnut West) which was built on the parcel by Walnut West Associates (the Partnership), a general partnership created on February 14, 1986, which has three general partners, viz., the University itself, the University City Associates, Inc. (UCA, Inc.), a wholly-owned for-profit corporate subsidiary of the University which manages various types of real estate, and the University of Pennsylvania Walnut West Pooled Income Fund (Fund). The tax exemption requested would increase each year, from 9.24% in 1988 to 19.86% in 1991. Kravco Company, the developer of the project entered into agreements with the University which provided, inter alia, that it would be able to lease the ground floor of Walnut West. The land itself is solely owned by the University, which, by means of a "ground" lease,[3] entered into

1. Act of May 22, 1933, P.L. 853, as amended, 72 P.S. § 5020–204.

2. It is undisputed that the University of Pennsylvania itself qualifies as a purely public charity within the meaning of Article VIII, Section 2(a)(v),. of the Pennsylvania Constitution and Section 204(a)(3) of the Law, 72 P.S. § 5020–204(a)(3).

3. The University, in its brief, characterizes this lease as "ground rent," but the agreement is simply a lease of the real estate, or "ground," for a term of 99 years, and not "ground rent" which is an interest in the real estate itself. See Section 15.10 of the lease, which provides that there will be no merger of title in the leasehold with the fee. estate. Ground rent, an incorporeal hereditatement, is an interest in land distinct and separate from the land out of which it issues and is created when an owner of land conveys his whole estate in fee simple to another, reserving for himself a rent service. Pronzato v. Guerrina, 400 Pa. 521, 524 n. 1, 163 A.2d 297, 298 n. 1 (1960). The grantor has the ground rent estate and the grantee the ownership of the land subject to

on July 1, 1986, was leased to the Partnership for a period of 99 years by the University.

The Fund was created by the University to allow it to raise contributions to construct Walnut West. The Fund, which is considered a pooled income fund and a split-interest trust for federal income tax purposes, provided a vehicle for donors to make charitable contributions to the University. The Fund agreement provides that the Trustees of the University are the trustees of the Fund and that the donors (the members of the Fund) and their designated beneficiaries would receive a lifetime income interest in the Fund, making an irrevocable gift of their remainder interests to the University. Upon the death of the donor or his or her beneficiary, that donor's share of the Fund's interest in the Partnership itself is transferred to the University. The donors also received certain federal income tax benefits, such as a deduction for a pro rata share of depreciation against their share of the Fund's cash flow, as well as charitable deductions. The Fund receives its partnership share of income from the rental of space in the Walnut West building.

The Fund was closed for membership on December 31, 1987, at which time it had not been fully subscribed.[4] In order to make up the shortfall, UCA, Inc. provided the remaining requisite funds needed for construction thereby creating a 52.76% interest in the Partnership for UCA, Inc. and a remaining 47.24% ownership interest for the Fund. The University had no ownership interest in the Partnership at its inception, but as members of the Fund expired, the University would acquire their proportionate ownership interest in the Partnership.

Construction of Walnut West was completed in 1988, whereupon the Partnership, as assignee from the University of the Kravco lease, leased 21.53% of the total floor space to Kravco

payment of the ground rent. Ladner, Real Estate Conveyancing, Vol. 1, § 104.

4. The University's goal was to raise $4,940,000 in contributions to the Fund. The Fund closed on December 31, 1987, with contributions of only $2,357,367.83 from 38 donors.

Company (comprising almost the entire ground floor.)[5] Kravco sublet the space to a restaurant and other retail subtenants, for which Kravco pays the Partnership market rental rates. The remaining four floors of office space and a small portion of the ground floor, which represents 78.47% of the gross floor area, was leased back to the University by the Partnership, for which the University pays market rental rates. The space leased by the University is used entirely for education, research, and administration by the University itself.

The University, which had no ownership interest in the Partnership at the outset, as of January 1, 1991, following the death of several members of the Fund, owned 17.35% of the Partnership after the shares of the deceased members were transferred to the University. As of January 1, 1991, the Fund had a 29.89% share of the Partnership, the University owned a 17.35% share, and of course, UCA, Inc. maintained its 52.76% interest.

On December 31, 1987, the University filed an Application for Exemption of Real Estate for Walnut West, seeking a charitable exemption for the tax years 1988 through 1991, pursuant to Section 204(a)(3) of the Law.[6] The Law provides that the University must occupy and use the property for academic purposes and possess legal or equitable title to the property[7] in order to qualify for the charitable tax exemption.

5. The Agreements were originally entered into by the University and Kravco, but they were subsequently assigned by the University to the Partnership by means of two assignments, both dated May 8, 1986.

6. That Section of the Law provides, in relevant part, that:
 (a) The following property shall be exempt from all county, city, borough, town, township, road, poor and school tax, to wit:
 . . . .
 (3) All hospitals, universities, colleges, seminaries, academies, associations and institutions of learning, benevolence, or charity, including fire and rescue stations, with the ground thereto annexed and necessary for the occupancy and enjoyment of same, founded, endowed, and maintained by public or private charity: Provided, That the entire revenue derived by the same be applied to the support and to increase the efficiency and facilities thereof, and for no other purpose. . . .
 72 P.S. § 5020–204(a)(3).

7. Section 204 of the Law further provides that:

In an attempt to comply with the Law, the University sought an exemption for the land and the Walnut West building which was actually occupied by it, based on the following formula: (A) the University's annual percentage of occupancy of Walnut West, multiplied by (B) the sum of the following: (1) the University's annual percentage interest in the Partnership, plus (2) the product of (a) the Fund's annual percentage of interest in the Partnership, times (b) the University's annual percentage of interest in the Fund calculated as the ratio of the annual value of the University's remainder interest in the Fund to the annual value of the total gift amount.[8] Stipulation of Facts No. 55. The University does

> (b) Except as otherwise provided in clauses (11) [pertaining to libraries] and (13) [pertaining to fire and rescue stations] of this section, all property real or personal, other than that which is actually and regularly used and occupied for the purposes specified in this section, and all such property from which any income or revenue is derived, other than from recipients of the bounty of the institution or charity, shall be subject to taxation, except where exempted by law for State purposes, and nothing herein shall exempt same therefrom.
>
> (c) Except as otherwise provided in clause (10) [pertaining to playgrounds] of this section, all property, real and personal, actually and regularly used and occupied for the purposes specified in this section shall be subject to taxation, **unless the person or persons, associations or corporation, so using and occupying the same, shall be seized of the legal or equitable title in the realty and possessor of the personal property absolutely.**

72 P.S. § 5020–204(b) and (c) (emphasis added).

8. Thus, for 1988 the University seeks a charitable exemption in the portion:

| | | |
|---|---|---|
| A. UPa's occup. Walnut West | | 78.47% |
| | | times |
| B. (1) UPa's int. in Ptnshp: | | 0 |
| | | plus |
| (2)(a) Fund's int. in Ptnshp: | 47.24% | |
| | times | |
| (b) UPa's rem int. in Fund: | 24.93% | |
| | | 11.77% |
| | | 11.77% |
| | | 9.24% |

Stipulation of Facts No. 57.

For 1989 the same formula would produce a 9.66% tax exemption, in 1990 a 9.46% exemption, and in 1991 a 19.86% exemption. Stipulation of Facts 58 through 60. We question the computation for 1990 based upon the accuracy of the University's remainder interest in the Fund.

not seek any exemption with respect to the space leased to Kravco.

On December 28, 1988, the Board conducted a hearing on the issue, after which, by a letter dated June 1, 1989, it denied the University's application. On June 30, 1989, the University filed a Petition for Review of the Board's order with the Court of Common Pleas of Philadelphia County. The trial court framed the issue as "whether the lessee [Partnership] under the lease is the owner of the building (and land) or whether the lessor [the University] retained legal or equitable title so as to qualify for the exemption." Trial Court opinion at 4. The trial court determined that ownership of Walnut West was vested in the Partnership, not the University, and that in any case the University's inability to physically use and occupy the land for "charitable purposes" prohibited even a partial tax exemption. Accordingly, the trial court affirmed the Board's decision denying the University's application. This appeal followed.

■■■■ On appeal,[9] the University argues that it is entitled to a tax exemption, for the land and the building, generally in proportion to its percentage of occupancy in the building, because the University actually owns Walnut West (the building) either outright or through its interest in the Partnership. The University, as the party seeking the tax exemption on the grounds of being a public charity, bears the heavy burden of proving entitlement to the exemption, *Appeal of Capital Extended Care*, 148 Pa.Commonwealth Ct. 128, 609 A.2d 896 (1992), and the statutory provisions exempting property from taxation are to be strictly construed. *Appeal of Archdiocese of Philadelphia*, 151 Pa.Commonwealth Ct. 480, 617 A.2d 821 (1992), *petition for allowance of appeal withdrawn*, 533 Pa. 653, 624 A.2d 112 (1993).

9. The question of entitlement to a tax exemption is a mixed one of law and fact and, absent any abuse of discretion or lack of supporting evidence, the decision of the trial judge is binding on this Court. *Appeal of Planned Parenthood Association of Bucks County*, 55 Pa.Commonwealth Ct. 195, 423 A.2d 760 (1980).

The issues presented for our consideration are whether the University owns Walnut West, and whether the University's use of the property fits within the exemption.

 We begin our analysis by first observing that the law does not exempt from taxation property which a charitable organization leases to another organization, unless that other lessee organization is the recipient of the lessor charitable organization's bounty. Section 204(b) of the Law, 72 P.S. § 5020-204(b); *Appeal of Archdiocese of Philadelphia.*

It is clear in this case that *if* the Partnership owns Walnut West—the building, then the property is not tax exempt because the Partnership is a for-profit general partnership which generates income and profit from leasing floor space in a commercial building. In *Appeal of Archdiocese of Philadelphia* we held that church property in a local parish owned by the Archdiocese of Philadelphia was not tax exempt because the Archdiocese received rental income for the leased property even though the lessee organization, the Delaware County Pro–Life Coalition, was itself a tax exempt charity.

In order to clear the financial hurdle of 204(b), Taxpayer would need to prove (1) that the premises are not the source 'from which any income or revenue is derived' by the Lessor; (2) that any rent paid was merely nominal; and (3) that the Lessee was itself the recipient of the Lessor's charity. Taxpayer has failed to prove any of these requirements.

*Id.* at 484, 617 A.2d at 823.

 In order to succeed, therefore, the University must establish that it, and not the Partnership, was the owner of Walnut West, and we have consistently held that when determining whether a lessor or lessee holds title to property on which the lessee has constructed a building, the courts looks to "indicia of ownership during the term of the lease" to ascertain who owns the property:

[T]he interests of a grantee or lessee under a term or estate for years is subject to taxation where there are indicia that

the title to the improvements, as well as the leasehold itself, remain in the lessee during the term.

*Venango Federal Savings and Loan Association v. County of Venango,* 73 Pa.Commonwealth Ct. 313, 315, 457 A.2d 1340, 1341 (1983); *see also Blue Knob Recreation, Inc. Assessment Appeal,* 122 Pa.Commonwealth Ct. 156, 551 A.2d 9 (1988). Furthermore, it is the intention of the parties to a lease which determines the ownership of the property. *Blue Knob Recreation, Inc. Assessment Appeal; In re: Costar Marine Tax Assessment Appeal,* 33 Pa.Commonwealth Ct. 447, 382 A.2d 156 (1978); *see also City of Philadelphia v. Straub,* 106 F.2d 172 (3rd Cir.1939).

We must, therefore, examine the agreements between the parties to determine whether ownership of the Walnut West building remained in the University or whether the parties intended the Partnership to own Walnut West.

The Disclosure Statement of October 23, 1986, which was provided to potential investors in the Fund, provided that:

> The Partnership has leased the underlying land from the University for 99 years, and will construct the Project on that land. **Although ownership of the project will be transferred to the University on the termination of the Ground Lease, in the meantime the Partnership will have all of the incidents of ownership of the Project.**

Reproduced Record at 28 (emphasis added).

We next examine the partnership agreement between the University, the Fund, and UCA, Inc., and believe that that agreement is the most critical piece of documentary evidence of all in determining which entity is the owner of the building, because, in the absence of a countervailing prohibition of the law or the intervening rights of third persons, the provisions of the Partnership Agreement itself are controlling and the "law of the Partnership" between the partners. *O'Donnell v. McLoughlin,* 386 Pa. 187, 125 A.2d 370 (1956).

Paragraph 2.08 of the partnership agreement defines the "project" as follows:

*Project.* The institutional office and commercial building located on a 62,390 square foot parcel between 34th and 35th Streets and Walnut and Moravian Streets and on 34th Street between Moravian and Sansom Streets, Philadelphia, Pennsylvania, to **be constructed and owned by the Partnership,** including the leasehold and all other property, real, personal or intangible, appurtenant to such building. (Emphasis added.)

And indeed, it is undisputed that all funds for the construction of Walnut West were provided solely by the Partnership and not the University.

Furthermore, the University, which originally executed the Development Consulting Agreement and Lease with Kravco, the developer, assigned that development agreement to the Partnership. That assignment is yet another indication that the Partnership was the owner, because the Kravco lease would be worthless if the Partnership was not the owner of the premises to be leased. Even communications from the University to the Board of Revision of Taxes describe the Partnership as the owner, *e.g.*:

(a) 'The Trustees have entered into a ground lease with Walnut West Associates, a partnership created by a subsidiary of the University to serve as the developer *and owner* of the building.' Letter dated January 25, 1988 from Paul R. Levy, Consultant, University of Pennsylvania, to the Board. Exhibit M of stipulated documents.

(b) Counsel for the University submitted a document to the Board on December 28, 1988 which stated the following:

| | |
|---|---|
| Fee Owners: | Land—The Trustees of the University of Pennsylvania |
| | Building—Walnut West Associates |
| Acquired: | Largely from the Redevelopment Authority for $695,600. |
| Current assessment (10/10/88): | Market value $20,045,000 |

Further, the ground lease between the Partnership and the University provides that in the case of an eminent domain award, the award would be split between the parties to compensate the University for the ground and the Partnership

for the improvements, *i.e.*, the Walnut West building. Section 16.01 of the ground lease further provides that:

> Lessor and Lessee agree that for all purposes under the Internal Revenue Code of 1954, as amended (the "Code"), *Lessee shall be deemed to be the owner of the Improvements and shall be entitled to all depreciation, amortization and cost recovery deductions with respect to the Improvements allowable under the Code.* Lessor and Lessee agree to prepare their respective tax returns consistently with the provisions of Section 16.01. (Emphasis added.)

Those tax advantages flowed to the Fund's donors as a result of their ownership interest in the Partnership, and although such tax treatment is not binding on this Court, it is properly a factor to be examined. Further, the long duration of the ground lease, while not the deciding factor, also indicates the equitable ownership interest in the building of the Partnership. *See In re Baltimore and Ohio Railroad,* 405 Pa. 349, 175 A.2d 841 (1961); *Filbern Manor Apartments v. Board of Assessment Appeals,* 138 Pa.Commonwealth Ct. 660, 589 A.2d 279 (Palladino, J., concurring), *petition for allowance of appeal denied,* 529 Pa. 626, 600 A.2d 541 (1991).

From a review of the documents governing this transaction, therefore, seen in their totality, it is clear that the trial court's conclusion that the Partnership owns Walnut West is not in error. The University is simply not seized of either the legal or the equitable title to the building itself at this time and is, therefore, barred from a charitable tax exemption under Section 204(c) of the Law.

The Trustees argue that because the University owns the land upon which Walnut West was built, and did not otherwise specifically convey the building to the Partnership, the University owns the building as well as the land. However, the fact that there was no formal conveyance from the University to the Partnership of the building is insufficient to overcome the other indicia that the Partnership owns the building. Moreover, even *assuming* that the University owned the building, as we have already stated, leasing it to the

Partnership, a for-profit organization, in and of itself precludes the grant of a tax exemption to the University. The Law provides that, "all such [tax exempt] property from which any income or revenue is derived, other than from recipients of the bounty of the institution or charity, shall be subject to taxation...." 72 P.S. § 5020–204(b); *Appeal of Archdiocese of Philadelphia.* The Partnership is not a recipient of the University's bounty, but a business entity organized to make a profit for its partners, and any income paid to the University as ground lease payments or as a result of its ownership interest in the Partnership through its interest in the Fund, is subject to taxation. *See School District of the City of Erie v. Hamot Medical Center,* 144 Pa.Commonwealth Ct. 668, 602 A.2d 407 (1992) (hospital which did not operate entirely free of profit motive is not entitled to charitable exemption from real estate tax).

■ The Trustees advance the alternative argument that the University is entitled to a charitable tax exemption in proportion to the University's ownership interest in the Partnership itself, which increases as members of the Fund and their beneficiaries expire and the University receives their remainder interest in the Fund. The Trustees argue that the Partnership and the Fund were merely financing vehicles. However, to be successful under this theory, the University would have to establish that the Partnership itself is an institution of purely public charity and itself entitled to a tax exemption under Section 204 of the Law, 72 P.S. § 5020–204. Our Supreme Court has set forth the requirements for such qualification in *Hospital Utilization Project v. Commonwealth of Pennsylvania,* 507 Pa. 1, 487 A.2d 1306 (1985) (*HUP* ), wherein it stated that:

> [A]n entity qualifies as a purely public charity if it possesses the following characteristics.
>
> (a) Advances a charitable purpose;
>
> (b) Donates or renders gratuitously a substantial portion of its services;

 (c) Benefits a substantial and indefinite class of persons who are legitimate subjects of charity;

 (d) Relieves the government of some of its burden; and

 (e) Operates entirely free from private profit motive.

*Id.* at 21–22, 487 A.2d at 1317 (1985); *see also Hamot Medical Center.*

The Partnership in this case, however, makes a profit from the rental payments it receives, and distributes the net profit to its partners, UCA, Inc., the University, and the Fund, and through the Fund to the members. The Partnership does not donate services, nor are all of its tenants, *i.e.*, Kravco, the legitimate subject of charity. The Partnership, therefore, cannot qualify as a purely public charity. *HUP.* The University's interest in the Partnership is an interest in a for-profit business organization. Therefore, the University's share of the Partnership is likewise subject to taxation.

The University argues that a partnership should be treated as an aggregate, not as an entity, and that if the partners are exempt entities, then any property owned by them is exempt, citing *West Mahanoy Township v. North Schuylkill Landfill Association,* 131 Pa.Commonwealth Ct. 149, 569 A.2d 1005 (1990). However, unlike the Partnership at issue here, every entity in the Landfill Association in *West Mahanoy* was tax exempt; here, UCA, Inc. is clearly not tax exempt nor was the income to the Fund. Furthermore, the Partnership here was created to make a profit and to distribute to its partners that income (*see* discussion *supra* at pp. 156, 158, 161), unlike the Landfill Association in *West Mahanoy* which was being used for public purposes. *Id.* Finally, the landfill Association in *West Mahanoy* was being compelled to *collect* a tax, unlike the situation in this appeal. *West Mahanoy* is thus inapposite.

The University argues, nevertheless, that even though it does not own Walnut West, it should be entitled to, at least, a tax exemption for the land, which no one disputes it owns, in proportion to its percentage of occupancy in the building (98.47% of the gross floor area). Under this theory, since the University at the same time both owns the land and

occupies a percentage of the building, it disputes the trial court's conclusion that "the fact that the [University] physically cannot use and occupy the land for 'charitable purposes' prohibits a full or partial exemption from taxes for the land only," relying on *Appeal of Municipal Authority of Borough of West View*, 381 Pa. 416, 113 A.2d 307 (1955), and *American Sunday–School Union v. Taylor*, 161 Pa. 307, 29 A. 26 (1894), as authority. But in both *Borough of West View* and *American Sunday–School* the institutions of purely public charity both owned the ground and occupied part of the building *without the need to rent the building space from a third party for-profit partnership*, and that is the critical factual difference between those cases and the facts in this appeal. Contrary to the argument of the University, both *Borough of West View* and *American Sunday–School* are case authority for the principle that any part of a building which is leased to a commercial enterprise, even though the profits from that commercial enterprise are used to further the charitable purpose of the owner in fee, is not tax exempt; and that would be true even if the commercial enterprise, *e.g.*, a book store selling "publications of a high moral character," was owned and operated by the charitable enterprise itself.

The distinguishing fact which separates this appeal from the case authority cited by the University is that this building was owned and managed by a general for-profit partnerships which generated business income, profits and tax benefits to its general partners and in return paid a fair rental to the University for the 99–year duration of the ground lease. Again, the Partnership, which owned Walnut West, was not an institution of pure public charity and as documented in the ground lease, it paid a basic rent of $85,000 annually to the University which rental increased by $12,750 on every future five-year interval.[10] This rental payment, of course, was only for the *land* under the ground lease, and was not in any way included in the additional rental that the University paid to the Partnership for its office space in Walnut West. For this

10. By the Court's calculations this would generate a net rental of $327,250 annually for the last five years of the lease.

Court to hold that a proportionate part of the land was tax exempt would result in both a tax exemption and a fair profit to be taken on the same land, which is a result which should not, and is not, permitted under Section 204 of the Law.

We hold that the trial court's decision neither lacked supporting evidence nor was there an abuse of discretion and we affirm the judgment of the court.

### *ORDER*

NOW, October 7, 1994, the order of the Court of Common Pleas of Philadelphia County in the above-captioned matter is hereby affirmed.