**William Duff McCRADY**

v.

**BOARD OF PROPERTY ASSESS-MENT, Appeals, Review & Registry of Allegheny County,**

v.

**ALLEGHENY COUNTY, Harmar Township, Allegheny Valley School District,**

**Appeal of ALLEGHENY VALLEY School District.**

Commonwealth Court of Pennsylvania.

Argued Feb. 5, 2003.

Decided May 20, 2003.

As Amended May 29, 2003.

Reargument Denied July 11, 2003.

John M. Means, Pittsburgh, for appellant.

Dusty E. Kirk, Pittsburgh, for appellee.

BEFORE: COLINS, President Judge, and McGINLEY, Judge, PELLEGRINI, LEADBETTER, Judge, COHN, Judge, SIMPSON, Judge, and LEAVITT, Judge.

OPINION BY Judge LEAVITT.

The Allegheny Valley School District (School District) appeals from the order of the Court of Common Pleas of Allegheny County (trial court) that affirmed in part and reversed in part a decision of the Allegheny County Board of Property Assessment, Appeals and Review and Registry (Board). The trial court held that the Board properly increased an assessment to include a value for a trailer added to the land, but it reversed the Board's reassessment of the land underlying the trailer as an improper spot assessment.

The facts relevant to this appeal are as follows. William Duff McCrady (McCrady) owns property located at Little Deer Creek Road, in Harmar Township, Allegheny County (Property). The Property consists of 9.29 acres of land that is bordered on two sides by railroad tracks and obstructed by telephone lines. The Property has long been vacant, used only by McCrady and his family for their family-operated sand and gravel business since 1925.

On November 30, 1989, McCrady agreed to a five-year lease of 5.5 acres of the Property to Strick Real Estate Company (Strick) for the parking and storage of Strick's trailers and related equipment. Pursuant to the lease, McCrady installed a six-foot chain link fence around the Property, but no improvements to the land were made.[1] In February of 1990, Strick moved a trailer onto the Property, and McCrady, after obtaining the necessary permits from the Township, connected sewage and water lines to the trailer. In 1993, Strick was purchased by Xtra Leasing, Inc. (Xtra), which became Strick's successor in interest with respect to the lease.[2] When the lease renewed in December of 1994, the lease was increased to 9.29 acres.[3]

In August of 1995, Frank Leonardo (Leonardo), an Allegheny County Assessor, learned of the existence of the trailer on the Property. Accordingly, he visited

---

1.  The School District notes that the lease calls for grading of the Property and putting down a hard surface sufficient to support trailers. Appellant Brief at 5. However, it is not clear that these improvements were undertaken. Parking improvements to the Property, such as laying down gravel chips, were done in connection with the McCrady sand and gravel business. R.R. 105a.

2.  Xtra and McCrady have renewed the lease several times and, at the time of the hearing, were operating under a one-year oral agreement. Xtra is required to remove the trailer no later than 30 days after expiration of the lease.

3.  The lease identifies the property as "approximately 9.5 acres." R.R. 89a.

the Property, reviewed the County's records on the Property, and determined that the trailer had been on the Property since at least 1991. Because the trailer had been omitted from the Property's assessment, Leonardo revised the assessment in two separate ways.

First, Leonardo increased the 1996 assessment of the land from $2,400 to $61,500. To arrive at this figure, Leonardo used the market value approach,[4] relying upon the sale of land across the street from the Property. This land, known as the Syria Temple Property, sold on March 24, 1993, for approximately $1,125,000, or $30,000 per acre. Leonardo concluded that the Property had a market value of $246,000, which was reduced to $61,500 under the County's predetermined ratio of 25%.[5]

Next, Leonardo assessed the trailer on the Property. Using a reference book, he assigned a market value of $20,000 to the trailer. Applying, again, the predetermined ratio of 25%, Leonardo assessed the trailer at $5,000.

Leonardo revised the County records to show an assessment of $66,500 for the Property; this assessment was broken down as follows: $61,500 for the land and $5,000 for the trailer. On January 8, 1996, the Board issued McCrady a Notice of Assessment Change that increased the Property's 1996 assessment from $2,400 to $67,500. On February 22, 1996, McCrady appealed the assessment change to the Board. On March 22, 1996, the Board issued a second Notice of Assessment Change, that set the 1996 assessment at $66,500, which was consistent with the County records. After a hearing, the Board issued a ruling of "no change," specifically setting the 1996 assessment at $67,500. McCrady then filed an appeal with the trial court.

In the meantime, the Board, at the School District's request, retroactively increased the assessment of the Property for the years 1991–1995.[6] For the years 1991 and 1992, the Property, including land and trailer, was assessed at $55,000 for each year.[7] For the years 1993, 1994, and 1995, the Property, including land and trailer, was assessed at $66,500 for each year. The Assessor issued Change Orders[8] to

---

4. The cost approach uses the sale price of the land and divides it by the acreage to determine the price per acre. R.R. 167a.

5. The Syria Temple Property contained 36.8 acres and sold for approximately $30,000 per acre. R.R. 162a, 209a. Leonardo multiplied the value per acre of the Syria Temple Property, $30,000, by eight acres of the McCrady Property, to arrive at a figure of $240,000 or $245,000. (Leonardo was unaware that the Property increased by 1.29 acres from 1995–1996. Thus, when Leonardo performed the assessment, he made the calculations based on eight acres rather than the current 9.29 acres).

   Next, Leonardo divided $246,000 by four, per the predetermined assessment ratio of 25% as required by Section 10(d) of the Act of June 21, 1939, P.L. 626, 72 P.S. § 5452.10(d), to arrive at an assessed value of $61,500 for the land.

6. When making this assessment, Leonardo admitted that he merely adjusted the values assigned for the year 1996 to come up with the assessments. When questioned how the values were determined, Leonardo testified that "we thought it was a fair value at the time." R.R. 184a.

7. The land alone was valued at $50,000 and the trailer was assessed at $5,000. R.R. 214a. Leonardo testified that when they went back in years to 1991–1992, the tax assessors sought to "give them a break." R.R. 184a. The pre–1996 assessment land values were not based upon sales, but Leonardo could not recall how they specifically came up with the $50,000 figure. Id.

8. The assessors used "the sales" for 1993, 1994, and 1995 to arrive at the $66,500 figure, which includes $61,500 for the land and $5,000 for the trailer.

implement these increases in the assessment. McCrady appealed these Change Orders for the years 1991–1995, and the Board issued a ruling of "no change,"[9] specifically setting the assessment at $66,500 for all five years. McCrady appealed this ruling of the Board to the trial court.

On September 21, 2001, the parties executed and filed a "Stipulations of Fact" (Stipulation) to establish the evidentiary record before the trial court. The Stipulation specified the legal issue to be whether the reassessments of the Property for the years 1991–1996 complied with: Article VIII Section 1 of the Pennsylvania Constitution;[10] the law popularly known as the Second Class County Assessment Law;[11] and the General County Assessment Law.[12] McCrady contended that the reassessment of the land constituted a spot assessment, and the Board responded that it was merely correcting a clerical error.

On June 7, 2002, the trial court issued an opinion upholding the assessment for the trailer but finding the land reassessment improper. The trial court agreed that assessors may correct clerical or mathematical errors[13] involved in the assessment of property, but it found the actions of the Board to go far beyond a correction and, as such, an impermissible spot assessment. Accordingly, on June 19, 2002, the trial court ordered the Board to adjust the land values for the years 1991–1995 to the original market value of $9,600.[14] For the years 1996–2000, the trial court ordered the Board to reduce the land assessments to values suggested to the trial court by McCrady.[15] The School District then appealed to this Court.[16]

---

The 1996 Notice of Assessment change indicated that the land was assessed in the amount of $62,500 and the trailer was assessed in the amount of $5,000. Leonardo testified that there were two reasons for this higher assessment: (1) the assessors were asked to round numbers off and (2) over the years the value of the land increased.

9. To preserve the issue, McCrady also filed appeals for the tax years 1999 and 2000 with the Board. Supplemental Reproduced Record, 1B–2B.

10. It states, that "[a]ll taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws." PA. CONST., art. VIII, § 1.

11. Act of June 21, 1939, P.L. 626, *as amended,* 72 P.S. §§ 5452.1–5452.20.

12. Act of May 22, 1933, P.L. 853, *as amended,* 72 P.S. §§ 5020–101–5020–602.

13. In some circumstances, assessment corrections are permitted by Section 13 of the Second Class County Assessment Law, Act of June 21, 1939, P.L. 626, *as amended,* 72 P.S. §§ 5452.1–5452.20.

14. Application of the predetermined ratio yields the pre-notice assessment of $2,400.

15. Specifically, the trial court's order stated:

[T]he land assessment will be adjusted as follows:
a. For the years 1991 through 1995 the land value be returned to the original value of $9,600;
b. The 1996 land value be reduced to $23,224;
c. The 1997 land value be reduced to $27,870;
d. The 1998 land value be reduced to $27,868;
e. The 1999 land value be reduced to $27,872; and
f. The 2000 land value be reduced to $27,869.

Trial Court Order dated June 19, 2002.

16. The School District appealed the tax assessment for the 1996 year separately for the years 1991–1995. The appeal for the 1996 year was docketed at 1751 CD 2002 whereas the appeal for the years 1991–1995 was docketed at 1750 CD 2002. On August 1, 2002, this Court consolidated sua sponte the cases 1750 CD 2002 & 1751 CD 2002 for consideration.

■ On appeal,[17] the School District asserts that the trial court erred. It argues that the Assessor's Change Orders simply corrected an error in the classification of the Property as vacant land when, in fact, it was income producing land.

■ Section 13 of the Second Class County Assessment Law (Law), Act of June 21, 1939, P.L. 626, *as amended,* is dispositive of this controversy. It states, in relevant part, as follows:

> The proper assessors shall, between the triennial assessments, revise any assessment or valuation according to right and equity by *correcting errors* and *by adding thereto any property, improvements or subjects of taxation which may have been omitted or any new property, improvements or subjects of taxation which may have come into being since the last triennial assessment.* Any property, improvements or subjects of taxation which may have been omitted shall be assessed and made subject to taxation for the period during which said property, improvements or subjects of taxation shall have been omitted but in no event to exceed the period of five calendar years preceding the year in which the property, improvements or subjects of taxation omitted is first added to the assessment roll.

72 P.S. § 5452.13 (emphasis added). The parties agree that the trailer is a "subject of taxation" that had been omitted from the assessment; accordingly, it was an error properly corrected under this statutory provision. The question is whether a revised assessment of the land under the trailer constitutes a "correction" within the meaning of Section 13.

Both parties rely upon *Appeal of Baltimore & O.R.R.,* 405 Pa. 349, 175 A.2d 841 (1961) to advance their interpretation of Section 13 of the Law. In *Appeal of Baltimore,* the B & O Railroad (Railroad) built a passenger station on land titled to the Commonwealth; accordingly, the land was classified as tax exempt. In 1956, the City of Pittsburgh requested that the tax-exempt classification be removed, and the Board of Assessment ordered that the property be reclassified for purposes of calculating city and school taxes. As a result, the property was assessed at $984,000 for 1957 and at $1,160,300 for 1958 and 1959. The Railroad appealed, arguing that tax liability must follow legal title. The Pennsylvania Supreme Court disagreed.

The Supreme Court reviewed the history of the land in question. As a result of a highway project, certain of the Railroad's land and facilities were condemned. The Commonwealth condemned other property in the City of Pittsburgh to facilitate a relocation. In 1952, the parties entered into a written agreement requiring, *inter alia,* the Commonwealth to provide the Railroad with the land needed for relocation and to give the Railroad fee simple title to the land. However, the deed transfer did not occur even after the Railroad's occupation of the land in question.

The Supreme Court refused to allow the Railroad to exploit its lack of title to the land in question. It found the Railroad to be the equitable owner of the land by virtue of the 1952 agreement, with the ability to demand legal title at any time. The Court recognized that generally taxes are determined by ownership, but it went on to hold that the "actual owner, who is not the record owner, may be assessed

---

**17.** This court's scope of review in a tax appeal is to determine whether the trial court abused its discretion, committed an error of law, or rendered a decision unsupported by the evidence. *Althouse v. County of Monroe,* 159 Pa.Cmwlth. 467, 633 A.2d 1267 (1993).

unless exempt from taxation." *Appeal of Baltimore*, 405 Pa. at 354, 175 A.2d at 844. The Railroad, not the Commonwealth, was found to be the "actual owner," and a correction to the erroneous tax exempt classification permitted.

The Railroad argued that, in any case, the assessment could not be changed until the next taxable year. The Supreme Court also rejected this argument, reasoning that

> [T]he board did not alter or change the assessment; it merely corrected the erroneous exempt classification. *The physical facts of the assessment and the valuation were not changed,* but only the legal conclusion of the board based on the facts as they existed on January 1, 1956. Under the Act of June 21, 1939, P.L. 626, *as amended,* 72 P.S. § 5452.13, the board had the right and obligation to correct an error of this nature.

*Appeal of Baltimore*, 405 Pa. at 354, 175 A.2d at 844 (emphasis added).

Here, by contrast, "the physical facts of the assessment and the valuation" of the Property have been changed. Indeed, Leonardo was quite candid about these changes to the valuation of the Property. He explained his methodology in developing the new valuation as follows:

> I looked at sales of land, similar land in the area. There was [sic] a few sales of land in the area. I averaged out the acreage. I looked at what a double-wide

trailer would sell for, put on the assessment, and what that ground would sell for accordingly.

R.R. 159a–160a. Leonardo further explained that had the lease between McCrady and Xtra been available, he might have used the income approach instead of the market value approach to do his valuation of the Property. Mechanically, this is a new assessment of the Property. The Board did what it can only do on a county-wide basis: it altered the "physical facts" of the Property's assessment and its valuation.

The Board's argument that it only changed the taxable category of the Property is not convincing. It relies on the premise that the land, previously classed as vacant, was not income producing until 1991, but the record does not support this premise. First, the record shows that the Property has been used for storage since 1925 in connection with the family's sand and gravel business, which was income producing. Second, the Board took its actions because of the addition of the trailer, and other than the erection of a fence, the record does not show changes to the land.

In short, the Board's claim that this is a change of tax category, not a new assessment, is sophistry we do not accept. We hold that the Board had no authority under Section 13 of the Law, 72 P.S. § 5452.13, to reassess the Property [18] be-

---

**18.** The trial court held that McCrady's assessment was an improper selective, or spot assessment, and, thus, unconstitutional. McCrady directs our attention to *Callas v. Armstrong County Board of Assessment,* 70 Pa.Cmwlth. 272, 453 A.2d 25 (1982); *O'Merle v. Monroe County Board of Assessment Appeals,* 95 Pa.Cmwlth. 141, 504 A.2d 975 (1986); and *Althouse v. County of Monroe,* 159 Pa.Cmwlth. 467, 633 A.2d 1267 (1993), as support for the trial court's holding. These cases provide support for the proposition that

where a board reassesses a single property to the exclusion of others in the county and this single assessment cannot be justified as a correction of error, the result may be in violation of Article VIII Section 1 of the Constitution. McCrady also directs us to *Radecke v. York County Board of Assessment Appeals,* 798 A.2d 265 (Pa.Cmwlth. 2002), as additional support for this proposition.

The application of the cases cited by McCrady are uncertain as they arise from different as-

yond the change produced by the addition of the trailer.

█ Next, the School District contends that the trial court erred by ordering reassessments of the land for the years 1997–2000 because no evidence of the appropriate assessments for those years was adduced by the trial court. The Stipulation limited the legal issue to the validity of the revised assessments for the years 1991–1996. Thus, the School District contends that the trial court should have remanded the case to allow the parties to present evidence regarding the appropriate land valuations for the years 1997–2000.

Section 518.1(b) of the General County Assessment Law,[19] 72 P.S. § 5020–518.1(b), provides as follows:

> (b) If a taxpayer has filed an appeal from an assessment, *so long as the appeal is pending before the board or before a court on appeal from the determination of the board, as provided by statute, the appeal will also be taken as an appeal by the taxpayer on the subject property for any valuation for any assessment subsequent to the filing of such appeal with the board and prior to the determination of the appeal by the board or the court.* This provision shall be applicable to all pending appeals as well as future appeals.

72 P.S. § 5020–518.1(b) (emphasis added). Thus, an appeal pending before a trial court will include the assessment for each successive year until the appeal is finally resolved. Here, the trial court did not

render its decision and order until June of 2002; therefore, the trial court had the authority under statute to determine whether the assessments were proper for the years 1997–2000.

In *Chartiers Valley School District v. Board of Property Assessment, Appeals and Review,* 154 Pa.Cmwlth. 81, 622 A.2d 420 (1993), this Court addressed the issue of how to address annual assessments that continue to be made during the course of litigation. We explained that to split off assessments for years subsequent to the initial appeal and remand them to the board would only create multiple trials. Thus, we held:

> So long as the real estate appeal is pending before the board or the [trial court], all subsequent tax assessments are incorporated. Once the case has come before the [trial court], *that court must hear evidence and decide all properly presented issues* relevant to all the tax assessments incorporated into the appeal.

*Chartiers,* 622 A.2d at 429 (emphasis added). Here, McCrady appealed the 1997–2000 assessments to the Board. They were, accordingly, incorporated into the appeal before the trial court.

The School District complains that the Stipulation only provided the trial court with a record for the years 1991 to 1996. Our Supreme Court has held that "[p]arties may by stipulation resolve questions of fact or limit the issues, and, if the stipula-

---

sessment statutes. The *Callas* cases arose from the Fourth to Eight Class County Assessment Law, which does not contain an express correction of errors clause. *Radecke* arose from the Second A and Third Class County Code, which defines spot assessment. This case arises from the Second Class County Code, which contains an express correction of errors provision but not a definition of spot assessment.

Because we find that this assessment violates Section 13, we need not reach the constitutional question raised by the Board's action.

**19.** The terms of the General County Assessment Law applies to all counties of the Commonwealth, 72 P.S. § 5020–104, including counties of the second class.

tions do not affect the jurisdiction of the court or the due order of the business and convenience of the court, they become the law of the case." *Moorhead v. Crozer Chester Medical Center,* 564 Pa. 156, 161, 765 A.2d 786, 789 (2001). Because the Stipulation did not extend beyond 1996, the School District argues that the trial court erred by ordering the Board to reduce the valuations on the land for the years 1997–2000.

The parties cannot restrict the trial court's jurisdiction to 1991 to 1996; in other words, their Stipulation cannot trump the effect of Section 518.1, which requires the trial court to render a decision on all years. Further, we do not agree that the trial court lacked a factual basis for deciding the additional years. Leonardo specifically testified that the Board did not change the assessments for 1997 to 2000. R.R. 196a. It was incumbent on the Board to make the record on any changes to the land that may have occurred after 1996, and it did not do so.

 Of concern to this Court is the lack of explanation for the land values ordered by the trial court for the years 1996 to 2000. They are as follows: $23,224 for 1996; $27,870 for 1997; 27,868 for 1998; $27,872 for 1999; and $27,869 for 2000. These numbers are exactly those requested by McCrady in his Motion to Rollback Real Estate Assessment. Otherwise, those land values are inexplicable and cannot be tied to evidence of record. However, the School District does not challenge the trial court's order for lack of evidentiary support. Mindful that we may not *sua sponte* raise issues that the parties, for whatever reason, do not raise, we will not disturb the trial court's order adopting the land values for 1996 to 2000 proposed by McCrady.

For these reasons, we affirm the trial court.

## ORDER

AND NOW, this 20th day of May, 2003, the order of the Court of Common Pleas of Allegheny County, dated June 19, 2002, in the above-captioned matter is hereby affirmed.