Joan E. Croasdale, Appellant *v.* Dauphin County Board of Assessment Appeals, Appellee.

Argued October 16, 1984, before President Judge CRUMLISH, JR. and Judges ROGERS, WILLIAMS, JR., MAC-PHAIL, DOYLE, BARRY and COLINS.

*Kevin J. McKeon, Malatesta, Hawke & McKeon,* for appellant.

*Carl G. Wass, Caldwell, Clouser & Kearns,* for appellee.

*Carroll F. Purdy, Thomas & Thomas,* for amicus curiae, School District of the City of Harrisburg.

OPINION BY JUDGE COLINS, May 22, 1985:

Joan E. Croasdale (appellant) appeals an order of the Court of Common Pleas of Dauphin County, which upheld the validity of a new assessment program undertaken by the Dauphin County Board of Assessment Appeals (Board). Appellant brings this suit in equity to prohibit the collection of the increased levy, based upon various constitutional and procedural issues.

An assessment has not been conducted in Dauphin County since 1973 and the facts of this case show that

approximately 90% of the properties in the county are underassessed. Claiming that a county-wide assessment is not economically feasible, the Board decided to correct this problem by a neighborhood-by-neighborhood reassessment which the Board claims will cover 90% of the County and take approximately three years to complete. The first area targeted by the Board for reassessment was appellant's Harrisburg neighborhood of Shipoke.

The Dauphin County reassessment plan, like other taxing schemes, is based on a mathematical procedure which begins with an assessment of the market values of the properties to be taxed. Property taxes are paid upon a certain percentage of these market values.

In general, a determination of market value includes a review of recent transfers of real estate within the neighboring area, a visual inspection of the exterior appearances of the property in question, and a correlation of any other unique factors which may affect the valuation of such real estate. The assessor, a trained expert, correlates these factors, and through the use of his expertise and training, arrives at an estimate of what the market value of the property would be. In the instant matter, there is no present contest as to the assessor's determination of market value.

Once the market value of a property is determined, this figure is then multiplied by what is known as the "common level ratio" in order to determine the assessed value for real estate taxation purposes. This "common level ratio" is a statistical tool, expressed as a percentage ratio of assessed value to current market value, used generally in each county for equalization of property tax burdens. This common level ratio is to be determined by the State Tax Equalization Board (STEB) pursuant to the Tax Equalization

Act.[1]  The STEB has the duty to annually establish a common level ratio of assessed value to market value in each county for the prior calendar year.[2]

Once the common level ratio is multiplied by the current market value of the property, the product is divided by the "predetermined ratio" to establish the assessed value at which the property should be taxed. The predetermined ratio is the ratio that the Board determines should exist between a property's assessed value and its fair market value.

In this case, the STEB determined the common level ratio of the Croasdale property for 1983 to be 17.9%. This common level ratio was then multiplied by $67,240.00, the market value of the property, for a product of $12,036.00. This product represents the current assessed value of the property in question.

As stated above, the last county-wide reassessment in Dauphin County was conducted in 1973 and the common level ratio is only 17.9%. Because the Board has determined that the predetermined ratio should be 30%, the product of $12,036.00 must be divided by 30%. Such an adjustment is necessary to correct for the inflation in market value from 1973 to 1983. This value equalled $40,120.00.

Following an appeal to the Board the 1973 (base year) market value of the Croasdale property was reduced and a new assessment value computed. The new tax assessment came to $9,666.00, as compared to the prior tax value of $1,863.00.

On appeal, appellant specifically alleges that the Dauphin County reassessment program violates Section 402(a) of the General County Assessment Law,[3]

---

[1] Act of June 27, 1947, P.L. 1046, as amended, 72 P.S.§§4656.1-4656.17.

[2] 72 P.S. §4656.7(a).

[3] Act of May 22, 1933, P.L. 853, as amended, 72 P.S. §5020-402(a).

the "common level ratio" provisions of the Third Class County Assessment Law[4] and Art. 8, §1 of the Pennsylvania Constitution.[5]

Both of the statutes relied on by appellant are very narrowly drawn checks on the power of the Board and are applicable only in limited circumstances.

The common level ratio provisions of the Third Class County Assessment Law are very limited and are for a specified purpose. Appellant specifically relies on Act 269,[6] which provides in pertinent part:

(d.1)   In any appeal of an assessment the board shall make the following determinations:

(1)   The current market value for the tax year in question.

(2)   The common level ratio.

(d.2)   The board, after determining the current market value of the property for the tax year in question, shall then apply the established predetermined ratio to such value unless the common level ratio varies by more than fifteen percent from the established predetermined ratio, in which case the board shall apply the common level ratio to the current market value of the property for the tax year in question.

Act 269 is a mechanism to be used on appeal to assure equitable assessment determinations. The procedure used by the Board, on the surface, was more complicated than merely multiplying the property's

---

[4] Act of June 26, 1931, P.L. 1379, *as amended*, 72 P.S. §§5342-5350k.

[5] Pennsylvania Constitution Art. 8, §1, provides:

All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws.

[6] Act of June 26, 1931, P.L. 1379, *as amended*, 72 P.S. §5349.

fair market value by the predetermined ratio but achieved exactly the same result—an assessed value of 30% of the Croasdale property's fair market value. The procedure may be said to have overcomplicated a simple procedure but does not result in any unfairness to appellant.

However, Section 402(a) of the General County Assessment Law provides a much greater obstacle to the present taxing schema. Section 402(a) states in pertinent part that:

[e]xcept in counties of the first class no political subdivision shall levy real estate taxes on a county wide revised assessment of real property until it has been completed for the entire county.

Hence, we must determine what constitutes a county wide assessment. William Collins, Director of Assessments for Dauphin County, testified before the trial court in this matter. When asked by Mr. McKeon, attorney for appellant, Mr. Collins stated that not only was the assessment plan to cover the entire county geographically, but that at least ninety percent of the properties in Dauphin County will be reassessed.[7] The Board argues that since ten percent of the properties are assessed at an accurate market value and since ninety percent are not, that a reassessment of the remaining ninety percent would not constitute a county wide reassessment. This is a distinction without merit. In reality, the plan will cover virtually all of Dauphin County and, as such, we would be hiding behind the sheerest of semantic veils to find that the intended plan is not a county wide reassessment. Whether or not the Board calls its plan a piecemeal assessment, the plan's effect as a county

---

[7] N.T. p. 23.

wide assessment is apparent. We find here a de facto reassessment of the entire county such that the delay provisions of Section 402(a), as it pertains to third class counties, must be triggered.

Because we find that the Board's plan is, in fact, a county wide reassessment, we will not at this time discuss appellant's claim of unconstitutional discrimination.

Since Section 402(a) of the General County Assessment Law forbids any levies on county-wide reassessments until they are 100% complete, the order of the trial court is reversed.

## ORDER

AND Now, May 22, 1985, the order of the Court of Common Pleas of Dauphin County, No. 291 S 1984, dated May 21, 1984, is reversed.

Judge WILLIAMS, JR. did not participate in the decision in this case.

---

DISSENTING OPINION BY JUDGE ROGERS:

I respectfully dissent. The facts very briefly are that Dauphin County tax assessment authorities conducted a county-wide assessment program in 1973 and applied a predetermined ratio of assessments to market values of 30 percent.[1] The State Equalization Board has, as required by statute, investigated and reported from time to time its conclusions as to the actual ratio of assessed to market value of properties

---

[1] It is important to note at the outset that the county assessments with which we are here concerned are the basis only for the county real estate tax; the doubtless more onerous Harrisburg city and school district taxes are levied upon assessments fixed by the city assessor as provided by Article XXV of the Third Class City Code, Act of June 23, 1931, P.L. 932, *as amended*, 53 P.S. §§35101-39701.

in the several counties. The state's conclusion is called the common level ratio. In the early 1980's the common level ratio in Dauphin County had fallen to 17.9 percent. The county's chief assessor's testimony, unrebutted, was that there indeed existed in Dauphin County areas notoriously underassessed and that one of these was the recently redeveloped residential district at the edge of downtown Harrisburg in which the appellant's property is located; that the county assessment authorities concluded that the state's 17.9 percent common level ratio indicated that the market values upon which their assessments of properties depend had not kept pace with the actual values; that this condition did not require a county-wide revision of assessments but that it could be cured by the revision of assessments in areas where the real estate market was known to be lively and upward bound and by the adjustment of market values in cases of the sales of individual properties for prices higher than the market values upon which their assessments were based.

The history of the assessment of the appellant's residence illustrates the cause for the erosion of the ratio of assessment to market values. In 1973 the property was acquired by the Harrisburg Redevelopment Authority for a nominal consideration. A developer acquired it in 1974 for $1320. The appellant paid $46,000 for it in 1979. In 1983 the property was assessed: land $156; building $1707; total $1863, the $1863 total being the county's predetermined ratio of 30 percent applied to a market value of $6,210. The assessment authorities upon examination of the appellant's property concluded that it was actually worth $67,240. They multiplied this amount by 17.9 percent, the state's common level ratio, to arrive at an assessment of $12,036, which they then divided by

the county's predetermined ratio of 30 percent to arrive at the market value to be used for assessment purposes of $40,120. This last figure, it will be noted, is $6,000 less than the appellant paid for the property in 1979 and $27,000 less than the assessors' opinion of its current worth. The appellant appealed her assessment to the county assessment board which reduced the putative market value to $32,220 and the assessment to $9,660.

The majority has struck down the appellant's new assessment and the county's plan to revise the lagging assessments in some areas and to adjust individual assessments based on recent sales information as violative of Section 402(a) of the General County Assessment Law, Act of May 22, 1933, P.L. 853, *as amended,* 72 P.S. §5020-402(a), providing that taxes may not be levied on a county-wide revised assessment until it has been completed for the whole county. Leaving aside the fact that the statute speaks not to the validity of assessments but to the validity of levies of taxes based on assessments fixed in an incomplete county-wide assessment program, we pass to the central issue of the case, that of whether the activities of the Dauphin County assessment authorities constituted a county-wide revised assessment. The term county-wide revised assessment is not defined in the assessment statutes. The concept, however, has been a familiar one since the early 1950's with the enactment of additions to the Fourth to Eighth Class County Assessment Law, Act of May 21, 1943, P.L. 571, *as amended,* 72 P.S. §5453.101-5454.706, requiring the subject counties, and permitting other counties, to prepare and maintain a uniform system of assessment records upon the basis of which the assessment of all subjects of local taxation must thereafter be made. The records referred to are detailed information con-

cerning every subject of local taxation. When the property record cards, a constituent of the uniform assessment records become so stale that they must be updated en masse, a county-wide revision of assessments based on the new property records may be indicated. The record in this case does not establish that the taxing authorities of Dauphin County are embarked on a county-wide revised assessment; they are, according to the only witness, the chief assessor, identifying and revising assessments in some but not all areas of the county, and adjusting the assessment of some individual properties recently sold. Both Section 505(b) of the General County Assessment Law, Act of May 22, 1933, P.L. 853, *as amended,* 72 P.S. §5020-505(b) and Section 7(b) of the statute relating to assessments in Third Class Counties, Act of June 26, 1931, P.L. 1379, *as amended,* 72 P.S. §5348(f), empower boards of assessment to make revisions of the assessments "at anytime in the year." It was this sort of partial revision which the chief assessor testified was intended and which the hearing judge found to be in progress. It therefore appears to me that the majority's finding that Dauphin County was in fact embarked on a still incomplete county-wide revised assessment is unsound. The chief assessor conceded that numerous assessments would be increased but he he did not agree that the court's undertaking was a county-wide revision.

Hence, there remains only the question of whether the appellant carried her burden of showing that a lower ratio of assessment to actual market value has been applied to other properties similar to hers. *Mc-Knight Shopping Center, Inc.,* 417 Pa. 234, 209 A.2d 389 (1965); *Brooks Building Tax Assessment Case,* 391 Pa. 94, 137 A.2d 273 (1958); *Valley Forge Golf Club, Inc. Tax Appeal,* 3 Pa. Commonwealth Ct. 644,

285 A.2d 213 (1971). The appellant identified no other similar property assessed more favorably than hers, and she failed to prove any facts justifying her charge that the revision of the assessments of properties in her neighborhood imposed non-uniform tax burdens upon the owners.

I would affirm the order of the Dauphin County Common Pleas Court.

Judge MacPHAIL joins in this dissent.