CITY OF HARRISBURG; Joan
E. Croasdale et al.,

v.

DAUPHIN COUNTY BOARD OF
ASSESSMENT APPEALS et
al., Appellants.

CITY OF HARRISBURG; Joan
E. Croasdale et al.,

v.

DAUPHIN COUNTY BOARD OF
ASSESSMENT APPEALS et
al.,

Joan E. Croasdale, Kristen G.
Acri et al., Appellants.

Commonwealth Court of Pennsylvania.

Argued Sept. 13, 1995.
Decided May 15, 1996.
Reargument Denied July 3, 1996.

Carl G. Wass, for appellants, Dauphin County Bd. of Assessment Appeals, et al.

Donna S. Weldon, for appellees, Joan E. Croasdale, et al.

Before COLINS, President Judge, and DOYLE, McGINLEY, SMITH, PELLEGRINI, FRIEDMAN and KELLEY, JJ.

SMITH, Judge.

The Dauphin County Board of Assessment Appeals, its members individually, Dauphin County and the City of Harrisburg School District (collectively, County) appeal from a final decree in equity of the Court of Common Pleas of Dauphin County. The court ordered, inter alia, a reassessment of all property in Dauphin County, ordered the County to roll back the 1987–1988 assessments of the individually-named property owners (Taxpayers) to the valuations prior to those revisions; enjoined the County from continuing its program of reassessments based upon rehabilitation in the City of Harrisburg until further order; and denied the Taxpayers' request for attorney's fees. Taxpayers cross-appealed from the trial court's order seeking tax refunds, attorney's fees and court costs.

The issues presented by the County are (1) whether the defense of laches requires the dismissal of Taxpayers' complaint, where virtually all political subdivisions within Dauphin County have levied and collected four or five years' worth of real estate taxes under the challenged assessments; (2) whether Taxpayers' equity action may be maintained where they have failed to exhaust a statutory remedy of appeal to the Dauphin County Board of Assessment Appeals and thereafter to the common pleas court; (3) whether equity has jurisdiction in a case where Taxpayers have not presented a substantial constitutional question; (4) whether the trial court erred in ordering a reassessment of all property in

Dauphin County, where the only inequalities and inequities found to exist were located exclusively in the City of Harrisburg; and (5) whether the trial court erred in enjoining the County from continuing to engage in its program of interim revised assessments based on rehabilitation in the City of Harrisburg.

The issues presented by Taxpayers on cross-appeal are whether the trial court abused its discretion in failing to permit a refund of taxes and related interest in contravention of explicit statutory directives on spot assessments and whether the trial court violated other statutory provisions by failing to award Taxpayers' litigation costs and attorney's fees.

## I.

The last county-wide reassessment in Dauphin County occurred in 1973. Ten years later, in 1983, the County, after determining that 90 percent of the properties were under assessed but that another county-wide reassessment was not economically feasible, attempted substantial revisions of assessments in the City of Harrisburg using a ratio reassessment program. In 1984, pursuant to the ratio program, every property in the Shipoke area of Harrisburg was reassessed. Several other areas of the city were also subsequently reassessed using the ratio program. The Shipoke area, however, was the only area where the revised assessments were implemented.

Joan E. Croasdale, an owner of property in the Shipoke area, also a party to the present action, filed an equity action seeking to enjoin collection of the increased 1984 tax. The common pleas court rejected Croasdale's challenge and upheld the County's new assessment. This Court in *Croasdale v. Dau-*

*phin County Board of Assessment Appeals,* 89 Pa.Cmwlth. 409, 492 A.2d 793 (1985) (*Croasdale I* ), determined that the 1984 ratio reassessment program constituted a de facto county-wide reassessment and reversed the common pleas court, holding that the new levy against the Shipoke properties violated Section 402(a) of The General County Assessment Law,[1] which forbids any levies on county-wide reassessments until they are 100 percent complete. As a result of a lack of resources the 1984 ratio reassessment program was never implemented county-wide.

In 1985 the County implemented a county-wide reassessment after determining that the current assessment system had become increasingly unequal. In fact, the County's 1984 common level ratio was 15.1 percent, only half of the County's predetermined ratio of 30 percent, indicating that assessment values were only half of market values.[2] Because Dauphin County became certified as a Third Class County in 1981, it was able to utilize a predetermined ratio of 100 percent pursuant to Section 7(c) of what is commonly referred to as the Third Class County Assessment Law.[3] As a result, in 1985 the County first adopted a 100 percent predetermined ratio for the 1973 market values, then doubled the 1973 market values in order to arrive at a January 1, 1986 market value.

In 1987–1988, the County focused on reassessing allegedly remodeled or rehabilitated property in the City of Harrisburg. The City of Harrisburg was the only municipality in Dauphin County were systematic reassessment activity, based on rehabilitation, was undertaken. The rehabilitated properties were assessed by first establishing the current market value in the year of the inspection (1987 or 1988), using a sales comparison

1. Act of May 22, 1933, P.L. 853, *as amended,* 72 P.S. § 5020–402(a). This section provides in pertinent part: "Except in counties of the first class, no political subdivision shall levy real estate taxes on a county-wide revised assessment of real property until it has been completed for the entire county."

2. In *Croasdale I* this Court noted that the "common level ratio" is a percentage ratio of assessed value to current market value and is calculated annually by the State Tax Equalization Board pursuant to the Tax Equalization Act, Act of June

27, 1947, P.L. 1046, *as amended,* 72 P.S. §§ 4656.1–4656.17. *Croasdale I,* 492 A.2d at 794. The predetermined ratio is the ratio that the County determines should exist between a property's assessed value and fair market value. *Id.*

3. Act of June 26, 1931, P.L. 1379, *as amended,* 72 P.S. § 5348(c). This provision states in part: "The board shall assess real property at a value based upon an established predetermined ratio which may not exceed one hundred percent of actual value."

approach. The current market value was then inserted into a formula to arrive at a current reassessment despite the fact that other properties, which had not been rehabilitated, were still assessed under a base year system utilizing 1973 market values.

In response Taxpayers, owners of properties reassessed under the 1987–1988 reassessment scheme, filed this present action on March 15, 1990 seeking equitable and declaratory relief based on the contention that the remodeling reassessments violated the uniformity of taxation requirement set forth in Article 8, Section 1 of the Pennsylvania Constitution: "All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws." Taxpayers also contend that both the 1985 reassessment and the 1987–1988 remodeling reassessment scheme violated the "equalization objective" contained in Section 7(d) of the Third Class County Assessment Law.[4] Taxpayers further contend that the County's implementation of the 1987–1988 reassessments in the City of Harrisburg violates Section 402(a) of The General County Assessment Law, which prohibits a county from levying any real estate taxes under a county-wide revised assessment of real property until it has been completed for the entire county.

■ A trial was conducted where both parties presented evidence. The County, however, failed to present a qualified expert who could offer an opinion as to the validity of Taxpayer's statistical and uniformity evidence. On February 23, 1994, the trial court entered a decree nisi, ordering, inter alia, a county-wide reassessment; the trial court, however, denied Taxpayers' request for refunds, attorney's fees and costs, and after disposing of post-trial motions, entered its decree nisi as a final decree. These appeals followed.[5]

## II.

■ Before this Court the County first contends that Taxpayers' equity action should have been dismissed on the ground that it is barred by application of the doctrine of laches because four years and five months had elapsed between the mailing of notice of the 1985 reassessments and the filing of Taxpayers' complaint. The mere passage of time does not give rise to an automatic finding of laches. *Lajevic v. Department of State, Bureau of Professional and Occupational Affairs,* 165 Pa.Cmwlth. 310, 645 A.2d 348 (1994). Laches bars relief when the complaining party is guilty of want of due diligence in failing to promptly institute an action to the prejudice of another. *Sprague v. Casey,* 520 Pa. 38, 550 A.2d 184 (1988). In order to prevail on an assertion of laches, the responding party must establish: (1) a delay arising from the petitioner's failure to exercise due diligence and (2) prejudice to the respondents resulting from the delay. Moreover, the question of laches is a factual one, and it is determined by examining the circumstances of each case. *Id.*

The circumstances in the present case do not support a conclusion that Taxpayers' action is barred by laches. Most importantly, because the relief granted by the trial court is prospective only and the County was not ordered to pay refunds, the school districts and local governments that relied on the 1985 reassessments will not be unduly prejudiced by the ordering of a county-wide reassessment. Further, the record indicates that the complaint was brought by real estate owners who promptly challenged the 1987–1988 interim revisions of assessments of their property based on alleged rehabilitation. Because the 1985 reassessment did contribute to a greater lack of uniformity, which was not immediately apparent to Taxpayers in that the County had represented to them that the 1985 reassessment would in fact lead to

---

**4.** 72 P.S. § 5348(d). The objective of Section 7(d) is to reach an assessment valuation that will accomplish equalization with other similar properties within the taxing district.

**5.** In a civil action in equity where the chancellor has made findings of fact and conclusions of law, this Court's scope of review is limited. The findings of the chancellor will not be disturbed unless it appears that the chancellor has clearly abused his or her discretion. *Zitelli v. Dermatology Educ. and Research Found.,* 534 Pa. 360, 633 A.2d 134 (1993).

equalization, the trial court correctly found that Taxpayers acted with due diligence in challenging the 1985 reassessment as well as the 1987–1988 remodeling reassessments. Accordingly, Taxpayers' equity action is not barred by the defense of laches.

■ The County next contends that Taxpayers' complaint should have been dismissed by the trial court for the reason that Taxpayers failed to exhaust a mandatory and exclusive statutory remedy by not appealing their individual assessments to the Board and then to the common pleas court pursuant to Section 8(c) of the Third Class County Assessment Law, 72 P.S. § 5349(c). That section provides for an appeal to the board of assessment appeals by any person aggrieved by an assessment. The County further contends that the complaint should have been dismissed because Taxpayers failed to raise a claim involving a substantial constitutional question for which there does not exist an adequate remedy at law in that they have not alleged that any particular provision of the General Assessment Law or Third Class County Assessment Law is unconstitutional.

In the present case, however, Taxpayers have raised a substantial constitutional question: whether the 1985 county-wide reassessment and the 1987–1988 remodeling reassessments violate the uniformity of taxation requirement set forth in Pa. Const. Art. 8, § 1. Furthermore, in *City of Lancaster v. County of Lancaster*, 143 Pa.Cmwlth. 476, 599 A.2d 289 (1991), *appeal denied*, 530 Pa. 634, 606 A.2d 903 (1992), a case involving facts similar to the present case, this Court accepted the plaintiff-taxpayers' assertion of no adequate statutory remedy where the inequality resulting from a recent partial reassessment program pervaded the entire taxing scheme.

In *City of Lancaster* the county chose to maintain its current assessment system while conducting a reassessment of 10 of the 60 taxing districts within the county, and it planned to address any inequities through the statutory appeals process. Every property in those 10 districts was reassessed. The Court in *City of Lancaster*, citing *Croasdale I*, held that the county's plan to update its assessment system by reassessing all properties in these 10 districts constituted a de facto county-wide reassessment. Finding no adequate statutory remedy for a county-wide reassessment in the statutory appeals process, the Court stated:

> To force every aggrieved taxpayer to assume the task of appealing, when the larger question can be expeditiously and efficiently resolved in a single action, would be unnecessarily burdensome on both property owners and the judicial system.

*City of Lancaster*, 599 A.2d at 300.

Such is also the case here with regard to the 1987–1988 reassessments of the allegedly rehabilitated properties in the City of Harrisburg. This reassessment program, like the neighborhood-by neighborhood reassessment program in *Croasdale I*, constitutes a de facto county-wide reassessment that violates the prohibition in Section 402(a) of the General County Assessment Law on levies on county-wide reassessments until they are 100 percent complete. Having determined that the 1987–1988 reassessments constituted a de facto county-wide reassessment, the trial court correctly assumed equity jurisdiction.

### III.

■ The County next contends that the trial court erred in directing a county-wide reassessment, where the testimony adduced at trial reflected only alleged inequities in assessment practices within the City of Harrisburg. It is well settled that where real estate is used as a basis for taxation, the values used for such real estate shall be arrived at and applied in a uniform and equal fashion. *In re Summit House Real Property Assessment Appeals*, 22 Pa.Cmwlth. 462, 349 A.2d 505 (1975). Here, the trial court concluded that both the 1985 reassessment and the 1987–1988 remodeling reassessments violated both the uniformity of taxation requirement in the Pa. Const., Art. 8, § 1 and the equalization objective of Section 7(d) of the Third Class County Assessment Law. The evidence of record supports the trial court's numerous findings that these two reassessment programs have aggravated the lack of uniformity throughout Dauphin County.

The trial court found Roger Downing, Taxpayers' expert witness, to be the only qualified expert on statistics and uniformity and rejected the testimony of William Collins, the County's director of assessments, on the ground that he was never qualified as an expert. Downing testified that Dauphin County's coefficient of dispersion (COD) (a statistical measure used to express the average percentage deviation between the property's ratio of assessment to market value and the county's common level ratio) has been outside the limits of acceptable uniformity since 1982, when the first COD study was done in Pennsylvania.[6] Consequently, there was a lack of uniformity throughout the County in 1984. Furthermore, the 1985 reassessment, which multiplied all properties by the same number, did not consider the unacceptable CODs throughout the municipalities of Dauphin County and especially in the City of Harrisburg. Using the same multiplier against all of the properties, despite their different common level ratios, resulted only in an aggravation of the lack of uniformity throughout the County.

Downing further testified that the 1985 reassessment did not take into account the fact that different land uses appreciate at different rates. Commercial and industrial properties do not appreciate as fast as residential properties. More expensive properties appreciate faster than less expensive properties. As a result, different land uses have different common level ratios. Instead of examining the common level ratios for each land use to determine appreciation, the County simply doubled the assessments of all properties regardless of whether they were residential, commercial/industrial or farm properties. The lack of uniformity throughout the County was aggravated, and some property owners pay more than their fair share of taxes while others pay less. Accordingly, the trial court did not err in determining that the 1985 reassessment violated the uniformity requirement of Pa. Const. Art. 8, § 1, as well as the equalization objective of Section 7(d) of the Third Class County Assessment Law.

Downing stated that the 1987–1988 remodeling reassessments also aggravated the lack of uniformity by using a "mixed methodology" approach to reassessing the rehabilitated properties. The County, while utilizing a 1973 base year system, inserted 1987 remodeling sales figures comparisons as a factor in reassessing the rehabilitated properties. Using 1987 valuations rather than 1973 valuations, the remodeled properties cannot be equalized with existing properties based on the 1973 base year system. This further aggravated the lack of uniformity throughout Dauphin County.[7] Downing's testimony regarding both the 1985 reassessment and the 1987–1988 remodeling reassessments was uncontradicted. Accordingly, the trial court did not err in concluding that both reassessment plans violated the uniformity requirement of Pa. Const. Art. 8, § 1 and the equalization objective of Section 7(d) of the Third Class County Assessment Law.

The County further contends that the trial court erred in ordering the roll back of the 1987–1988 remodeling reassessments for the reason that Section 7(f) of the Third Class County Assessment Law, 72 P.S. § 5348(f), permits the County to make revisions based upon remodeling at any time of the year. Having already determined that these reassessments constituted a de facto county-wide reassessment and that they violated the uniformity requirement of Pa. Const. Art. 8, § 1, as well as the equalization objective of Section 7(d) of the Third Class County Assessment Law, this Court need not further address this issue. This Court notes that the trial court made additional findings that the 1987–1988 reassessments were done in such an arbitrary and careless manner so as to be rendered invalid on this basis alone.

## IV.

■ On cross-appeal, Taxpayers contend that the trial court abused its discretion in

---

**6.** A COD standard of 20 (20 percent deviation) is the limit for acceptable uniformity. In 1984 the COD in Dauphin County was 26.8, and the COD in the City of Harrisburg was 49.2.

**7.** Section 7(c) of the Third Class County Assessment Law states that a county must utilize either current market value or base year market value in arriving at a property's assessed value. Here, the County's failure to utilize 1973 base values in performing reassessments of rehabilitated properties clearly violates Section 7(c).

failing to permit a refund of taxes and related interest to the named individual parties contrary to explicit statutory directives on spot assessments; Taxpayers also contend that the trial court abused its discretion by failing to award expert and attorney's fees. Taxpayers have brought the underlying equity action against the County on the basis that the statutory remedies available to them under the General County Assessment Law and the Third Class County Assessment Law are inadequate. In *Leonard v. Thornburgh*, 75 Pa.Cmwlth. 553, 463 A.2d 77 (1983), the Court stated that in equity cases a chancellor possesses the broad and flexible ability to grant remedial relief where justice and good conscience so require. "This is a sacred responsibility which must be exercised with both due diligence and the full consideration of the rights of all, and with an acute awareness of the harm that may result from the improvident granting of a specific requested relief." *Id.* 463 A.2d at 79.

In the present case, the chancellor's decision not to award Taxpayers refunds, litigation costs and attorney's fees is supported by the record. Taxpayers' equity complaint was filed in March 1990, approximately five years after the 1985 reassessments. During that time, Taxpayers did not give notice to their respective municipalities that they were challenging the assessments and were requesting refunds, as required by Section 518.1 of The General County Assessment Law, added by Section 2 of the Act of December 28, 1955, P.L. 917, 72 P.S. § 5020–518.1. Those who seek equity must do equity. *Sprague.* Absent any challenge to their validity, those assessments, and the revenues collected under them, were relied upon by the school districts and municipalities of Dauphin County. Accordingly, in balancing the interests of Dauphin County as a whole against the interests of Taxpayers as individuals, the trial court did not abuse its discretion by determining that Taxpayers be limited to prospective relief only. In view of the foregoing, the order of the trial court is affirmed.

### ORDER

AND NOW, this 15th day of May, 1996, the order of the Court of Common Pleas of Dauphin County is affirmed.

KELLEY, Judge, dissenting.

Because I believe the majority embarked on an erroneous departure from sound principles of government, I respectfully dissent.

In March of 1990, the owners of 67 parcels of realty situated in the City of Harrisburg filed an equity action seeking a rollback of tax assessments from 1985 and revision of 1987.

Fundamentally, application of equity is inappropriate where there is an adequate remedy at law, where no unreasonable delay has occurred and where discretionary action is proper.

The majority affirms the trial court's erroneous determination that application of equity is warranted under the circumstances of this case. This erroneous determination provides the Taxpayers with a sanctuary of under-assessment and correspondingly advantaged tax status.

The individual Taxpayers filed the instant equity action on March 14, 1990. Essentially the complaint attacked the methodology of the tax assessments of July 1, 1985 as applied to the Taxpayers' properties in the Shipoke and mid-town areas in the City of Harrisburg.

Each individual owner failed to exhaust his or her statutory rights to pursue grievances concerning the 1985 reassessment. As such, the adequate remedy at law was not pursued, and equity should not be invoked to provide a different remedy.

Furthermore, if equity was in fact appropriate, it still would be inapplicable in the present case. Because of Taxpayer's excessive delay of four years and nine months, laches is clearly applicable.

Evaluation of real estate is such an inexact science that it necessitates the exercise of discretion. Judicial acceptance of the expert opinions within condemnation cases often varies by fifty percent or more.

The true test of the tax assessment is whether the requirement of uniformity has been satisfied, i.e., the similarity of assessment to similarity of characteristic of the

property and improvements. In the present case, the record is devoid of facts indicating any widespread disparity of such. It may be possible that disparity exists; however, this record falls short of supporting such a conclusion.

I believe that the trial court erred in ordering the county-wide reappraisal. The Assessment Board and the County Commissioners have the discretion to correct errors or grievances resulting from the exercise of governmental duties. The record in the instant case is inadequate to support the conclusion that the remedy of mandatory reappraisal was justified.

Accordingly, I would reverse the trial court's decision.